566 A.2d 755

**BALTIMORE CITY POLICE DEPARTMENT**

v.

**Michael ANDREW.**

No. 26, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 5, 1989.

4

Otho M. Thompson, Associate Sol. (Neal M. Janey, City Sol., Ambrose T. Hartman, Deputy Sol., all on brief), Baltimore, for appellant.

Michael Marshall (Herbert R. Weiner, Schlachman, Belsky & Weiner, P.A., all on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

A subtitle of Article 27, Annotated Code of Maryland sets forth the "Law Enforcement Officers' Bill of Rights" (LEOBR). Included within that subtitle is Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 728(b)(4). It states:

"A complaint against a law enforcement officer, alleging brutality in the execution of his duties, may not be investigated unless the complaint be duly sworn to by the aggrieved person, a member of the aggrieved person's immediate family, or by any person with firsthand knowledge obtained as a result of the presence at and observation of the alleged incident, or by the parent or guardian in the case of a minor child.... *An investigation which could lead to disciplinary action under this subtitle for brutality may not be initiated and an action may not be taken unless the complaint is filed within 90 days of the alleged brutality.*" [Emphasis supplied.]

The question presented in this case is whether § 728(b)(4) prevents a police department from proceeding with a disciplinary action against one of its officers when the disciplinary action is based on charges of brutality and the departmental investigation of the allegedly brutal conduct is generated by an aggrieved person's sworn complaint, filed more than 90 days after the incident in question.

## I.

The factual context within which this question arises is relatively straightforward. On or about 7 November 1987, Michael Artis (Mr. Artis) drove a bus load of passengers to Memorial Stadium in Baltimore, to attend the Maryland–Clemson football game. When the game was over, Mr. Artis prepared to drive the bus from the stadium. The vehicle's path, however, was obstructed by a Winnebago camper in the vicinity of which a group of individuals in civilian clothes were enjoying a post-game tailgate party. Mr. Artis approached the group and asked one of its members to move the camper. According to Mr. Artis, this request produced curses and blows from the individual at the camper. A struggle ensued during the course of which another person, later identified as appellee, Captain Michael Andrew (Captain Andrew) of the Baltimore City Police Department, intervened. Again according to Mr. Artis, Captain Andrew placed Mr. Artis in a headlock, repeatedly

banged Mr. Artis's head against the camper, used abusive language, and eventually arrested him or caused his arrest, apparently for assault.

Mr. Artis avers that on 27 January 1988 he was acquitted of the charges against him. About a month after that (clearly more than 90 days after the 7 November incident), he filed a sworn complaint with appellant, Baltimore City Police Department (the Department). The complaint itself, as it appears in the record, is virtually illegible. As interpreted by a witness at a hearing in the Circuit Court for Baltimore City, it substantiates the account given in the preceding paragraph. In any event, it precipitated an investigation by the Department's Internal Investigation Division, and the issuance of the following notice to Captain Andrew:

> It is alleged, on 7 Nov. 87, at Memorial Stadium Parking Lot, you placed complainant Michael Artis in a headlock & threw him against a Winnebago, which he deemed unwarranted action. Also that you called him a "mother fuckin nigger" and "black bastard" which he believed to be discourteous language.

Eventually, the Department charged Captain Andrew with violation of a number of departmental regulations. In general, the charges alleged use of improper language, "conduct unbecoming a" police officer "by use of unnecessary physical contact" and otherwise, use of unnecessary force, and giving a false statement. Captain Andrew responded by seeking a show cause order and an injunction to protect rights he claimed under the LEOBR, and specifically under § 728(b)(4).[1] On 16 November 1988, after a hearing,

---

1. Article 27, § 734 permits "[a]ny law enforcement officer who is denied any right afforded by this subtitle [to] apply at any time prior to the commencement of the hearing before the hearing board ... to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded." *See Cochran v. Anderson,* 73 Md.App. 604, 613–614, 535 A.2d 955, 959–960 (1988); *Chief, Balto. Co. Police v.*

the Circuit Court for Baltimore City (Ward, J.) enjoined the Department "from prosecuting or otherwise taking any disciplinary action against" Captain Andrew with respect to the charges involving allegations of brutality. Judge Ward agreed that Captain Andrew was protected by a statute of limitations created by § 728(b)(4). When the Department appealed to the Court of Special Appeals, we issued a writ of certiorari on our own motion and prior to any proceedings in that court.

Before we deal with the statute of limitations question, we shall dispose of the Department's contention that § 728(b)(4) does not govern this case.

## II.

### A.

■ The Department argues that because Captain Andrew was not charged with "brutality," § 728(b)(4), is inapplicable. It is true that the statement of charges against Captain Andrew does not use that word. But it does accuse him of using excessive and unnecessary force. The Department itself has defined "brutality" as including "any situation wherein an officer, while acting in his official capacity, resorts to the use of physical force which was unnecessary in its origin and application." Section III(B), Annex A to the Department's General Order 48–77 (1 July 1977). The charges here, and the conduct underlying them, are consistent with that definition and with the general understanding of what constitutes "brutality" in the context of police misconduct. *See Maryland State Police v. Resh*, 65 Md. App. 167, 177, 499 A.2d 1303, 1309 (1985), *cert. denied*, 305 Md. 244, 503 A.2d 253 (1986) (characterizing as "brutality" conduct less egregious than that allegedly involved here). We hold that excessive force in making an arrest is brutality within the meaning of § 728(b)(4).

---

*Marchsteiner*, 55 Md.App. 108, 113–116, 461 A.2d 28, 30–32 (1983). No issue about the applicability of § 734 is raised in this case.

## B.

The Department also asserts that the use of the phrase "may not" in the first and last sentences of § 728(b) ("[a] complaint ... may not be investigated" and "[a]n investigation ... may not be initiated and an action may not be taken") renders the entire paragraph merely directory. Putting aside the notion of a bill of rights that is merely hortatory and, therefore, unenforceable, we note that the General Assembly has explained how it ordinarily intends "may not" to be understood: "In this Code and any rule, regulation, or directive adopted under it, the phrase 'may not' or phrases of like import have a mandatory negative effect and establish a prohibition." Md.Code (1957, 1987 Repl.Vol.), Art. 1, § 26. "May not," in § 728(b)(4), is the equivalent of "shall not."

## C.

Another line of argument pressed by the Department is a bit harder to follow, but has no more merit than the two we have disposed of. The Department's position seems to be that because there are certain provisions of the Code of Public Local Laws of Baltimore City regarding the handling of complaints against police officers or giving the police commissioner the power to take certain actions, then the LEOBR (or at least § 728(b)(4)) does not apply to prevent departmental discipline in a case like the one before us.

One set of these provisions, enacted by Chapter 889 of the Acts of 1975, establishes the Complaint Evaluation Board (CEB) in Baltimore City. Code of Public Local Laws of Baltimore City (1979 & 1989 Cum.Supp.), §§ 16–41—16–50. These sections create a mechanism through which one who claims to have suffered or to have observed an act of discourtesy or excessive force by a Baltimore police officer may have that allegation reviewed by a nondepartmental agency. When a complaint is received by the CEB, it makes findings of facts and recommendations and submits them to the police commissioner. Sec. 16–42(f). Final disciplinary authority rests with the commissioner. Sec.

16–44. There seems to be no time limit for submitting a complaint to the CEB.

The Department is of the view that the CEB subtitle of the Public Local Laws affords a procedure that is an alternative to the LEOBR. Under this reading, even if the time restrictions of § 728(b)(4) are not met, a brutality (or excessive force) complaint may be processed under the CEB dispensation. Whether this sort of bypassing of the LEOBR is permissible presents an interesting question.[2] Sections within the CEB title seem inconsistent with the Department's contention. For example, § 16–45 makes clear that "[n]othing in the [subtitle] may abrogate any statutory ... right of police personnel against whom a complaint is filed." But we need not decide the question, because the record fails to show that Mr. Artis's complaint came to the Department through the CEB.

Section 16–42(a) lists the Department's Internal Investigation Division (IID) as one of the places where a CEB complaint may be lodged. Mr. Artis, in fact, lodged his complaint there; his sworn statement is on a CEB form, and it contains a CEB docket number as well as an IID number. Section 16–42(e) calls for the IID to investigate a complaint within ninety days of its receipt and transmit a report to the CEB. It appears that the IID investigated Mr. Artis's complaint. But the record contains no hint of any further CEB action, such as findings and recommendations. Thus, we cannot say that in this case the CEB process was the basis for or, indeed, played any part in generating the Department's disciplinary actions against Captain Andrew.

---

2. Captain Andrew cites *Prince George's County v. St. Comm'n*, 40 Md.App. 473, 392 A.2d 105 (1978), as answering the question in the negative. It does not, because it has no precedential value. We trust it was only through oversight that Captain Andrew failed to note that we vacated the Court of Special Appeals' judgment in *State Comm'n v. Prince George's Co.*, 285 Md. 205, 401 A.2d 661 (1979), pointedly observing that "this action leaves open the issues decided in the opinion of the Court of Special Appeals." *Id.* at 207, 401 A.2d at 662.

As a consequence, the issue of whether the CEB law somehow bypasses the LEOBR simply is not before us.

The second set of local provisions upon which the Department relies are those granting the police commissioner certain powers regarding discipline of police personnel. Turning again to the Code of Public Local Laws of Baltimore City, we find that subsections 16–7(7) and (8) give the commissioner broad authority to "reduce in rank, . . . reassign, reclassify, retire and discharge all members of the Department" and to "regulate attendance, conduct, training, discipline and procedure for all members of the Department and to make all other rules, regulations and orders as may be necessary for the good government of the Department and of its members." *See also* § 16–11 (section spells out in detail police disciplinary procedures, which are to be carried out "in accordance with rules, regulations, or orders to be prescribed by the Commissioner for the government and discipline of members of the Department"). From this the Department reasons that the "much broader public policy considerations of maintaining the integrity of the department and of promoting public confidence in the conduct of police officers dictates that any acts of misconduct may be independently investigated and properly pursued by the department or commissioner regardless of the LEOBR." Alternatively, the Department asserts that we have held that there is no conflict between "the statutory scheme governing the Police Department under the Public Local Law [and the requirements] set out in the LEOBR."

To support the latter argument, it cites *Police Comm'r v. Dowling*, 281 Md. 412, 379 A.2d 1007 (1977). In *Dowling*, we did point out that the LEOBR does not preempt the Code of Public Local Laws of Baltimore City, since both enactments were accomplished by the General Assembly. Preemption, strictly speaking, deals with action of a higher legislative authority vis-á-vis that of a lower legislative authority. *Id.* at 417–418, 379 A.2d at 1010. And we said, in a rather general way, that the procedures spelled out in § 16–11 of the Code of Public Local Laws prescribe hearing

procedures "similar to those provided in the" LEOBR. *Id.* at 416, 379 A.2d at 1009. But we did not hold that there is no conflict between the LEOBR and any provision of Title 16 of the Code of Public Local Laws or the regulations promulgated thereunder.

*Dowling* involved the question whether the police commissioner had authority to review the actions of a departmental trial board. At the time of the proceeding against Dowling, the LEOBR had no specific provision in this regard; § 16–11(d) expressly gave (and still gives) the commissioner power to review board findings and conclusions and to "affirm, reverse, or otherwise modify the action taken by the Disciplinary Board." We held that the two statutes could be harmonized by a construction whereby the board recommendations required by Article 27, § 731 would "be transmitted to the Commissioner for his ultimate decision, just as a master makes findings and recommendations to a chancellor." 281 Md. at 423, 379 A.2d at 1013. The situation in *Dowling* allowed room for that construction, because the LEOBR contained no explicit prohibition against review by the commissioner.[3] Those circumstances are not present here. If Title 16 of the Public Local Laws or the regulations promulgated thereunder authorize the Department to process a brutality complaint even though a sworn complaint is filed more than 90 days after the alleged incident, and if § 728(b)(4) of the LEOBR prohibits such a procedure, the two are in conflict. We must, therefore, consider the Department's contention that the Code of Public Local Laws supersedes the LEOBR.

---

3. By Chapter 366, Acts of 1977, effective before our decision in *Police Comm'r v. Dowling*, 281 Md. 412, 379 A.2d 1007 (1977), was filed, but not mentioned therein, the General Assembly, among other things, added a new subsection (c) to § 731 of the LEOBR. This new provision, with which *Dowling* is consistent, provides that a hearing board's recommendations are not binding on a police chief who may review them and make the final (and appealable) decision as to discipline.

**12**

We reject this argument. We read a statute in a way that will carry out the goal or objective the legislature was seeking to accomplish. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 516, 525, A.2d 628, 633 (1987). In enacting the LEOBR, the legislature sought to guarantee specified procedural safeguards to certain law enforcement officers subject to investigations that might lead to disciplinary actions. *Montgomery Co. Dep't of Police v. Lumpkin*, 51 Md.App. 557, 566, 444 A.2d 469, 473 (1982). Any law enforcement officer covered by the LEOBR is entitled to the protections it offers with respect to a departmental inquiry that could lead to disciplinary sanctions. *DiGrazia v. County Exec. for Mont. Co.*, 288 Md. 437, 452, 418 A.2d 1191, 1200 (1980). If a police commissioner or chief vested with regulation-making authority could use those regulations to strip away those protections, the LEOBR would be little more than a set of hortatory guidelines to be disregarded at the whim of local officials. We do not believe that this was the legislative plan.

To begin with, pertinent provisions of the Code of Public Local Laws for Baltimore City show no intent to override general laws. For example, § 16–7(7), giving the commissioner authority to promote, demote, reassign, retire, and discharge Baltimore police officers, expressly says that these things may be done only in "the manner prescribed by law." By the same token, as we have already noted, § 16–45 (part of the CEB subtitle) makes plain that nothing therein "may abrogate any ... statutory ... right of police personnel against whom a complaint is filed." This language in no way suggests a legislative purpose to grant the police commissioner a free-wheeling power to disregard a statute specifically dealing with police discipline. Section 16–45's reference to statutory rights seems especially significant, since the General Assembly that enacted it (by Ch. 889, Acts of 1975) had adopted the LEOBR but one year previously.

More to the point, however, is the language of the LEOBR itself. The initial enactment of this law was by

Chapter 722 of the Acts of 1974. Section 2 of that act displays a legislative purpose to make the LEOBR the governing statute within its field of operations: "[A]ll laws or parts of laws, public general or public local, inconsistent with this Act, are repealed to the extent of the inconsistency." Three years later, when it enacted Article 27, § 734B by Chapter 366 of the Acts of 1977, the General Assembly stated its position even more broadly: "The provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle."[4]

One can scarcely imagine a clearer statement of the scope of the LEOBR. The subtitle is to be a law that is supreme and all-encompassing, within its State-wide sphere of operations. If § 728(b)(4) absolutely bars any investigation of a brutality complaint that might lead to disciplinary action against an officer, provided the sworn complaint is filed more than 90 days after the alleged incident, then no regulation of a police commissioner or police chief can change that outcome.[5] Our next step, therefore, must be to determine whether that outcome is consistent with the legislative goals of the LEOBR, and particularly of § 728(b)(4).

### III.

■ Section 728(b)(4) declares that "[a]n investigation which could lead to disciplinary action under this subtitle

---

4. Subsequent amendments to § 734B have added an exception not here material, but have left intact its basic message.

5. We have not overlooked the rule of construction contained in Maryland Code (1957, 1987 Repl.Vol.), Article 1, § 13: "Where the public general law and the public local law ... are in conflict, the public local law shall prevail." This general rule may be overcome by a sufficiently clear expression of contrary legislative intent. *See, e.g., Hitchins v. City of Cumberland,* 208 Md. 134, 117 A.2d 854 (1955), *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A.2d 103 (1954). The language of the LEOBR does exactly that.

for brutality may not be initiated and an action may not be taken unless the complaint is filed within 90 days of the alleged brutality." On the face of it, that language would seem to preclude any investigation of or disciplinary action against Captain Andrew because Mr. Artis's sworn complaint was filed well beyond the 90-day period. But because the meaning of even apparently plain language may be controlled by the context in which it appears, *Nelson v. State*, 315 Md. 62, 66, 553 A.2d 667, 669 (1989), we seek out the context of this sentence by reviewing its legislative history.

As we have seen, the LEOBR was enacted by Chapter 722, Acts of 1974—the first statute of this sort to be adopted by any state. Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self-Incrimination*, 16 U. of Balt.L.Rev. 452, 492 (1987). The measure did not meet with universal approval. One writer described it as "poorly drafted and [failing to] accomplish the intended purpose" of providing "law enforcement officers throughout Maryland with certain guaranteed rights prior to ... action which would be punitive in nature." Lerner, *Police Bill of Rights Causes Local Chaos*, Vol. 5, No. 5 Municipal Maryland 10 (Nov.1976). At the 1976 session of the General Assembly, 44 bills were introduced relating to the LEOBR. Statement of Roy W. Rafter, Chairman of the Governor's Commission to Review the LEOBR, to the House Judiciary Committee (22 Mar.1977). The legislative response was to urge the Governor to appoint a commission to prepare legislation "to remedy certain inconsistencies and deficiencies relating to the operation, implementation and administration of the" LEOBR. Resolution No. 61 of 1976.

A commission was duly appointed. It addressed, among other things, § 728(b)(4).

When enacted in 1974, that provision said only:

No complaint against a law-enforcement officer, alleging brutality in the execution of his duties, shall be investigated unless the complaint be duly sworn to before an official authorized to administer oaths.

This language may be seen as designed to protect officers against frivolous complaints via the oath requirement, but it certainly is no statute of limitations. Nor was any of the 44 unsuccessful LEOBR bills in 1976. But several of them did propose amendments to § 728(b)(4). Two, HBs 1565 and 2134, would have required the sworn complaint to be made by someone who had personal knowledge of the facts.

The Governor's Commission to Review the Law Enforcement Officers' Bill of Rights considered these proposals and many other concerns about the LEOBR. Initially, it decided to require that the § 728(b)(4) complaint be sworn to by the aggrieved party unless that person was dead or incapacitated, in which case any witness could make the complaint. Additionally, a parent or guardian of a minor child could complain. Commission Minutes, Meeting of 21 Oct. 1976. These proposals evolved into what is now the first sentence of § 728(b)(4). The general idea was to limit the categories of persons who could file complaints. Commission Minutes, Meeting of 29 Oct. 1976. This idea is fully consistent with the goal of the 1974 version of § 728(b)(4)—to protect officers against frivolous complaints.

During these discussions, a Commission member (a local police chief) suggested the addition of a statute of limitations to § 728(b)(4). Commission Minutes, Meeting of 29 Oct. 1976. The Commission proceeded to propose the following language: "No investigation will be initiated or action taken unless the complaint is filed within 30 days of the alleged brutality." *Id.* at 2.

With only minor additions, this language was inserted in HB 1651 of 1977, which embodied all of the Commission's recommendations. Statement of Chairman Rafter, *supra.* The Commission minutes make it obvious that the Commission intended this sentence to operate as a statute of limitations. That purpose was adopted by the General Assembly. The language is, of course, perfectly consistent with that purpose. But it is not entirely clear precisely what that statute of limitations is to bar.

While HB 1651 (which eventually became Chapter 366 of the Acts of 1977) was before the Judiciary Committee, the Prince George's County Human Relations Commission expressed opposition to the last sentence of § 728(b)(4). It recognized that this sentence was a statute of limitations and did not quarrel with that approach. Instead, it objected to the very strict 30–day period for filing the complaint. It pointed out that the stringent time provision might, among other things, make it difficult for the Commission to give an aggrieved person proper assistance in filing a complaint. Letter from the chairperson of the Prince George's County Human Relations Commission to Chairman Joseph Owens of the Judiciary Committee (22 Mar.1977), Committee file on HB 1651 of 1977. It was suggested that "a six months[ ] to one year limitation would be much more reasonable."

The bill was amended to extend the period of limitations from 30 to 90 days. This was to "provide the additional time for the Human Relations Commission to conduct its investigation, assist the complainant in filing formal charges, and submit its report to the proper police authorities." Letter from Chairman Owens to Delegate Rummage, Chairman of the Prince George's County Delegation (7 Apr. 1977), Judiciary Committee file on HB 1651. *See also* Memorandum from Delegate Sheehan, a member of the Judiciary Committee, to the Prince George's Delegation (4 Apr. 1977), Judiciary Committee file on HB 1651.[6]

Thus, the available history demonstrates that the last sentence of § 728(b)(4) was designed to operate as a statute of limitations. This approach is consistent with the notion of protecting police officers from irresponsible or frivolous complaints of brutality. It also is consistent with the general goals of the LEOBR. *See DiGrazia,* 288 Md. at 452, 418 A.2d at 1200; *Lumpkin,* 51 Md.App. at 566, 444

---

6. The issue was important in Prince George's County because its Human Relations Commission had (and has) express authority to investigate police brutality complaints. Prince George's County Code, §§ 2–229—2–231.

A.2d at 473. *See generally* Pippenger, *The Policeman's Bill of Rights: Don't Be Afraid,* Vol. 12, No. 6 Municipal Maryland 8 (Dec.1983).

But what the statutory language, consistent with the legislative history, bars is further investigation or proceedings in a brutality matter at the behest of the complainant, if the complaint has not been filed within 90 days. It does not bar further proceedings if the police agency, on its own initiative, decides to conduct an investigation or press charges.

In other words, when a qualified complainant files a sworn brutality complaint within the 90–day period, the police agency has a duty to proceed with an investigation. If that same complainant files a sworn complaint more than 90 days after the incident of alleged brutality, there is no duty to investigate. But if the police agency decides on its own to proceed with the investigation (and with the placing of charges if the investigation so indicates), § 728(b)(4) does not prevent it from doing so.

Police brutality is a serious matter.[7] Its existence, or even its apparent existence, can have adverse effects within a police agency and on the agency's relationship with the community it serves. A conscientious police commander cannot condone brutality and must have the discretion to punish any of his officers who engage in it. The commander also must have the concomitant authority to initiate investigations to determine whether the excessive use of force has occurred. The "chief of any ... law enforcement agency[ ] must have the ability to conduct the affairs and

---

7. That the legislature regards police brutality charges as serious matters requiring serious treatment may be gleaned from, among other things, Article 27, § 730(b) as enacted by Chapter 330 of the Acts of 1988. Section 730(b) adopts a general one-year statute of limitations with respect to the bringing of administrative charges against an officer pursuant to the LEOBR. But excepted from that one-year statute of limitations are "charges related to criminal activity *or excessive force."* [Emphasis supplied.] *See also* Article 27, § 727(c), which extends the definition of "law enforcement officer" to probationary officers when allegations of brutality are involved.

operations of his department in an effective and efficient manner." *Resh*, 65 Md.App. at 176, 499 A.2d at 1308. *See Cochran v. Anderson*, 73 Md.App. 604, 616, 535 A.2d 955, 960 (1988) (purpose of § 734 is to enforce an accused officer's rights, not to "restrict agency's legitimate right to discipline errant officers"). *See also DiGrazia*, 288 Md. at 453, 418 A.2d at 1200 (when LEOBR hearing board recommends disciplinary sanction, chief of police makes final decision whether to impose punishment). The General Assembly itself has recognized the special authority a chief must have when "the best interest of the public and the law enforcement agency" are concerned. *See, e.g.*, Art. 27, § 734A(2)(i) (authorizing emergency suspension with pay under those circumstances).

Captain Andrew's narrow reading of § 728(b)(4) would seriously hamper a local chief's ability to manage and discipline the police agency. For example, if the force exerted on Mr. Artis had been so great as to render him unconscious for over 90 days, and had Captain Andrew filed the official report which he submitted in this case, giving no inkling of any possible misconduct on his part, there would have been nothing to alert the Department to any need for an investigation; a post–90–day report filed by Mr. Artis would have been too late and any further action by the Department would be precluded by § 728(b)(4). We cannot believe that a result so inconsistent with common sense was intended by the legislature. *Cider Barrel Mobile Home v. Eader*, 287 Md. 571, 583–584, 414 A.2d 1246, 1253 (1980) (court should avoid statutory construction that leads to results which are unreasonable, illogical, or contrary to common sense).

In *Resh*, the Court of Special Appeals found § 728(b)(4) to be inapplicable because the investigation that was undertaken there was not generated by a § 728(b)(4) complaint, but rather by an internal police agency report. That is, the subsection simply did not apply. 65 Md.App. at 177, 499 A.2d at 1309. Since that November 1985 decision, the General Assembly has met four times, but has not taken any action to override *Resh's* interpretation of § 728(b)(4).

This inaction is some indication of legislative acquiescence in that interpretation. *See Nationwide v. USF & G*, 314 Md. 131, 143, 550 A.2d 69, 75 (1988). Moreover, in reaching the *Resh* holding, Judge Karwacki explained that the subsection "was never intended to bar the initiation of an investigation into brutality on the part of a law enforcement officer by the agency that employs him." 65 Md.App. at 177, 499 A.2d at 1309. We agree.

Whether the source of information about brutality comes from a tardy complaint by an aggrieved person, from sources completely internal to a police department, or from some other source, § 728(b)(4) does not prevent the agency from deciding, in its discretion, to investigate the circumstance and to take further action if that seems warranted. In the case before us, the Department decided to proceed. Its presence in this Court shows that this decision remains in effect. Accordingly, we must reverse the judgment of the Circuit Court for Baltimore City enjoining the Department "from prosecuting or otherwise taking any disciplinary action against ... Captain Andrew," with respect to the charges relating to brutality.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEE.