568 A.2d 1181

**CITY OF HAGERSTOWN**

v.

**Michael D. MOATS, et al.**

**No. 699, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 6, 1990.

**624**

---

Lawrence S. Wescott (Ronald W. Taylor and Venable, Baetjer and Howard, on the brief), Baltimore, for appellant.

Byron L. Warnken, Baltimore, for appellees.

Argued before ALPERT, BLOOM and FISCHER, JJ.

ALPERT, Judge.

This case involves a dispute between the City of Hagerstown ("the city") and two Hagerstown police officers ("the officers") over the correct procedures to be used in determining whether the officers should be disciplined. The city argues that the officers must submit to the procedures of the Law Enforcement Officers' Bill of Rights (LEOBOR), Md.Ann.Code art. 27, §§ 727–734D. The officers contend that they may choose instead to waive their rights under the LEOBOR and file a grievance under the collective bargaining agreement between the city and the officers' union.

In 1974, Maryland became the first state in the nation to enact a bill of rights for law enforcement officers. Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self–Incrimination*, 16 U.Balt.L.Rev. 452, 492 (1987) [hereinafter cited as Warnken]. As we noted in *Cancelose v. City of Greenbelt*, 75 Md.App. 662, 542 A.2d 1288 (1988):

The purpose behind the LEOBR is to guarantee law enforcement officers certain procedural safeguards dur-

ing any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal. *Abbott v. Administrative Hearing Board, Prince George's County*, 33 Md.App. 681, 682, 366 A.2d 756 (1976), *cert. denied*, 280 Md. 727 (1977). Since the nature of the duties of police officers is different from that of other public employees, the establishment of different procedures covering any potential disciplinary action is justified. *Abbott*, 33 Md.App. at 688, 366 A.2d 756.

*Id.* at 666, 542 A.2d 1288. For purposes of this case, the following three sections are most relevant:

§ 730. Hearing before demotion, dismissal, transfer, etc.; limitation of actions.

(a) *Notice; record.*—If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, except as provided under subsection (c) of this section ["Hearings for convicted felons"] and except in the case of summary punishment or emergency suspension as allowed by § 734A of this subtitle and before taking that action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing.

. . . .

§ 734B. Conflicting law, ordinance or regulation; preemption of local legislation.

Except for the administrative hearing process provided for in Article 41, § 4–201 concerning the certification enforcement power of the Police Training Commission, the provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle, and any local

legislation shall be preempted by the subject and material of this subtitle.

### § 734D. Waiver of rights.

Any officer may waive in writing any or all rights provided in this subtitle.

Since 1986 the city has had a collective bargaining agreement with the officers' union, the American Federation of State, County, and Municipal Employees Council 67, Local 3373, AFL–CIO (AFSCME). Article XII of the agreement contains a general discussion of the grievance procedures to be followed, and Article XIII covers arbitration procedures. Section 5 of Article XII, entitled "Exclusion from Grievance Procedure," reads as follows:

The procedures outlined in Articles XII and XIII of this Agreement shall not be applicable to any disputes instituted and processed under the Officer's Bill of Rights, Maryland Annotated Code, Article 27, Sections 727–734D or any other provision of the Maryland Annotated Code.

In November 1988 the city's police department initiated an investigation of the two officers, Michael D. Moats and J. Michael Shifler, for allegedly misrepresenting facts intentionally, in violation of the department's rules and regulations. It appears that one or both officers were interrogated pursuant to § 728 of the LEOBOR. On January 2, 1989, the department notified the officers that they were being charged with major infractions of the rules and regulations. The officers also were informed that a hearing had been scheduled for February 2, 1989, pursuant to the LEOBOR. Pursuant to the collective bargaining agreement, the officers filed a grievance against the department, on January 12, 1989, arguing that the allegations of administrative violations were unfounded and seeking dismissal of the alleged administrative violations. Police Chief Paul L. Wood denied the grievance on January 13, 1989, on the basis that the matter was excluded from the grievance and arbitration procedure of the collective bargaining agreement. In his letter, Chief Wood specifically cited the language of Article XII, § 5 of the agreement.

On February 1, 1989, the officers filed an application for a show cause order, pursuant to § 734 of the LEOBOR,[1] in the Circuit Court for Washington County. On the same day, Judge Fred C. Wright, III issued a show cause order and stayed both the police department's scheduled LEO-BOR hearing and the officers' grievance procedure.

Judge Wright held a hearing on March 8, 1989, and issued a memorandum opinion on March 14, 1989. He concluded that a dispute between officers and a police department cannot be "processed" within the meaning of Article XII, § 5 unless a § 730 LEOBOR hearing has been held. Because Officers Moats and Shifler had not yet had such a hearing, according to Judge Wright, they could waive their LEOBOR rights and proceed to file a grievance under the provisions of the collective bargaining agreement. In his Order of Court of March 28, 1989, Judge Wright also ordered: (1) that the LEOBOR is not an exclusive remedy, and (2) that the collective bargaining agreement's grievance and arbitration procedures are applicable to disciplinary matters. The city filed a timely appeal.

On appeal, the city raises the following questions:

A. Whether a proceeding, in order to be "[instituted] and processed" under the LEOB[O]R, must necessarily include a hearing.

B. Whether a disciplinary proceeding conducted in accordance with the LEOB[O]R up to the point of the issuance of disciplinary recommendations may be the subject of a grievance under a labor contract, the terms of which exclude[ ] matters "[instituted] and processed" under the LEOB[O]R.

---

1. Section 734 states that:
   Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

We shall not address these issues as framed, for we believe that there is a critical preliminary question which must be addressed: In enacting § 734D, which permits officers to "waive in writing any or all rights provided in [the LEOBOR]," did the Legislature intend to allow officers to circumvent the LEOBOR procedures and file grievances concerning disciplinary matters under their local collective bargaining agreement? Because we answer this question in the negative, and hold that the LEOBOR provides an officer's exclusive remedy in such cases, we reverse.

## Intent of the Legislature

The Maryland Legislature enacted the LEOBOR in 1974 amidst a lengthy push in Congress for a federal law enforcement officers' bill of rights. Between 1973 and 1977, fifty-two such bills were introduced. Warnken, *supra*, 16 U.Balt.L.Rev. at 489. A total of seventy-two bills were introduced between 1970 and 1988, but none was reported out of committee, and no such federal law enforcement officers' bill of rights has ever been passed. *Id.* at 489–90. The arguments of the federal bills' proponents, however, are instructive in our construction of the Maryland LEOBOR. In 1972, for example, Edward Koch, then a New York Congressman, lamented:

> It is unfortunate that in a nation like ours such a bill is needed; but history has shown all too often that policemen's rights are abridged by local department regulations and procedures. In some communities, . . . when accused of malfeasance, [police officers] are not given the same rights and protections accorded ordinary citizens. Furthermore, an imbalance has evolved because, while we have taken steps to insure the rights of defendants and complainants, we have failed to protect the rights of policemen.

118 Cong.Rec. H23,900 (1972) (cited in Warnken, *supra*, 16 U.Balt.L.Rev. at 490). The following year, Illinois Congressman Frank Annunzio remarked:

It is regrettable that legislation of this nature is needed at all. Law enforcement officers should be entitled to the same protection of the laws they are required to enforce. Policemen should be as free of intimidation and harassment during the process of a hearing as is the average citizen....

119 Cong.Rec. H2051 (1973) (cited in Warnken, *supra,* 16 U.Balt.L.Rev. at 491).

No record is kept of statements made on the floors of the Maryland Legislature, and thus we have no similar quotes from proponents of the LEOBOR. We noted in *Nichols v. Baltimore Police Dept.,* 53 Md.App. 623, 455 A.2d 446, *cert. denied,* 296 Md. 111 (1983), however, that

[i]n enacting the LEOBOR, the Legislature vested in law-enforcement officers certain "rights" not available to the general public. Among those "rights" are:

1. The "right" to be informed *in writing* of the nature of the investigation *before* the interrogation begins. Art. 27, § 728(b)(5).

2. The "right," once interrogation has commenced, to "reasonable rest periods." Art. 27, § 728(b)(6).

3. The "right" to have the length of the interrogation session limited to a "reasonable period" of time. *Id.*

4. The "right" to have all questions asked of the officer by one interrogating officer in any one session. In sum, there can be no "Jekyll & Hyde" operation, or of a "machine-gun" type inquiry, whereby questions are fired at the "suspect" in rapid succession by two or more interrogators. Art. 27, § 728(b)(3).

5. The "right" to a complete written record of the interrogation. Art. 27, § 728(b)(8).

6. The "right" to be informed prior to commencement of interrogation if it is likely the officer will be placed under arrest. Art. 27, § 728(b)(9).

*Id.* at 627, 455 A.2d 446 (emphasis in original).

The Court of Appeals stated in *Prince George's County v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), *cert.*

*denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981) that

> a claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary general jurisdiction of the courts.... [Consequently, we] have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not by-pass the administrative body or official, by pursuing other remedies.

*Id.* at 283, 418 A.2d 1155 (quoting *Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 332, 277 A.2d 591 (1971)). The court then added that one of the principal reasons for this exhaustion requirement with respect to administrative bodies was that "the issues are largely within the expertise of the involved agency to hear the evidence and determine the propriety of the request." *Id.* [288 Md.] at 284, 418 A.2d 1155.

While *Blumberg* did not involve a contract remedy such as the grievance procedure here, and thus is not on point, it is instructive because it emphasizes the wisdom of permitting agencies with expertise in a specific area to decide issues concerning that area. When we compare the LEO-BOR hearing process to the collective bargaining agreement's grievance procedures, we conclude that the bill of rights permits decisions by the administrative body with the greater expertise. Article XII of the agreement details a three-step process: (1) a "meeting" between the aggrieved officer and his or her immediate supervisor; (2) a "meeting" between the officer and the city chief of police or a designee; and (3) a "meeting" between the officer and the city personnel manager. The only additional persons entitled to attend these meetings are a city representative and, if the officer desires, one or two representatives of AFSCME.

Unlike the rather informal grievance procedure meetings, the LEOBOR hearings approximate a full-blown trial in circuit court. Both the law enforcement agency and the officer may be represented by counsel. Md.Ann.Code art. 27, § 730(c). The parties present evidence, which, along with all records and documents, is made part of the record. *Id.* at § 730(d). Witnesses testify under oath, and all parties have the right to cross-examination. *Id.* at § 730(e), (g). Finally, and perhaps most significantly, the LEOBOR hearing board consists of at least three law enforcement officers, none of whom took part in the investigation or interrogation of the officer in question. *Id.* at § 727(d)(1).

The LEOBOR is a "special form of remedy" as contemplated by the Court of Appeals in *Blumberg.* The Legislature established the statutory procedures for just the kind of case we have before us—a disciplinary matter. *See Chief, Montgomery County Dept. of Police v. Jacocks,* 50 Md.App. 132, 135, 436 A.2d 930 (1981) ("[The LEOBOR] deals with situations in which some charge or complaint is made against a police officer, or he otherwise comes under suspicion of misbehavior...."); *Chief, Baltimore County Police Dept. v. Marchsteiner,* 55 Md.App. 108, 116, 461 A.2d 28 (1983) ("The LEOB[O]R rights apply when a law enforcement officer is under investigation by a law enforcement agency as a result of a disciplinary-type complaint lodged against the officer."). We believe that the LEOBOR, an extremely comprehensive statute requiring nearly twenty pages in the Maryland Annotated Code, provides an "adequate and available" procedure, and that the issues involved in deciding whether an officer should be disciplined are within the expertise of that officer's police or sheriff's department. Who else, for example, is better equipped to determine what constitutes "conduct unbecoming an officer" than other law enforcement officers?

Nothing in the plain language of the LEOBOR indicates that the Legislature, either when it originally passed the bill of rights in 1974 or when it added § 734D in 1977, intended to permit officers to pick and choose between the LEOBOR

procedures and the collective bargaining agreement procedures. It is interesting to note that the Maryland Legislature passed two bills, Senate Bill 860 in 1987 and Senate Bill 227 in 1988, that would have amended § 734D to permit officers to do just that. The amended bills would have read, "Any officer may waive in writing any or all rights provided in this subtitle, and may elect, in the alternative, the procedural or substantive rights or guarantees provided under a collective bargaining agreement." Summaries of the Senate Judicial Proceedings Committee Reports concerning the two bills state that, "[u]nder the current law, a right provided under the LEOB[O]R may be waived by an individual officer but it is uncertain whether a collective bargaining agreement would be preempted if it conflicted with the LEOB[O]R." Governor Schaefer vetoed both bills, saying (as to both) that the result of such bills "would be an inconsistent application of the Law Enforcement Officers' Bill of Rights and a patchwork of supplemental protections under collective bargaining agreements." 1987 Md.Laws 3599, 3600; 1988 Md.Laws 5162, 5163.

Subsequent enactment by the Legislature may "throw light on its intention and the meaning of the earlier enacted statute." *See* 82 C.J.S. *Statutes* § 360. It thus becomes apparent that the Legislature, as manifested by its 1987 and 1988 enactments, believed that a collective bargaining agreement probably could not supersede the LEOBOR and that it was necessary to amend the existing statute in order to give police officers a choice of procedural rights. Those enactments serve to strengthen our conclusion that the procedures under the LEOBOR are exclusive ones. *See Bosley v. Dorsey,* 191 Md. 229, 240, 60 A.2d 691 (1948).

Accepting the interpretation of § 734D urged by Officers Moats and Shifler—that the section currently empowers law enforcement officers to file grievances related to disciplinary matters under their local collective bargaining agreements—would require us to read into § 734D an amendment the Legislature never provided. As the Court of

Appeals noted in *Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 493 A.2d 341 (1985):

> The primary source for determining the legislature's intent is the language of the statute itself which should be construed according to its ordinary and natural import. A statute should not be construed by forced or subtle interpretations designed to extend or limit the scope of its operation.

(Citations omitted.)

Construing § 734D "according to its ordinary and natural import," we hold that Officers Moats and Shifler must submit to the LEOBOR procedures; they may not waive their LEOBOR rights and then file grievances concerning disciplinary matters under the collective bargaining agreement. We thus reverse the order of the circuit court.

ORDER OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED; APPELLEES TO PAY THE COSTS.