597 A.2d 972

**Michael D. MOATS et al.**

v.

**CITY OF HAGERSTOWN.**

**No. 43, Sept. Term, 1990.**

Court of Appeals of Maryland.

Nov. 4, 1991.

Byron L. Warnken, Baltimore, for petitioners.

Joel A. Smith, Abato, Rubenstein and Abato, Lutherville, amicus curiae for American Federation of State, County and Municipal Employees, Council 67 and American Federation of State, County and Municipal Employees, Local 1859.

Lawrence S. Wescott (Ronald W. Taylor, Venable, Baetjer & Howard, Baltimore), on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr., (retired) and THOMAS J. CURLEY, Associate Judges of the Court of Appeals, Specially Assigned.

ELDRIDGE, Judge.

We granted a petition for a writ of certiorari in this case to decide whether a law enforcement officer may waive the procedures under the Law Enforcement Officers' Bill of Rights, Maryland Code (1957, 1987 Repl.Vol., 1991 Cum. Supp.), Art. 27, §§ 727–734D,[1] and elect to pursue a grievance under a collective bargaining agreement.

In November 1988 Officers Shifler and Moats of the Hagerstown Police Department were investigated for and charged with intentionally misrepresenting facts on an overtime report. The City of Hagerstown Police Department's Rules and Regulations classified this misrepresentation as a major infraction, and the officers were notified of the

---

**1.** The relevant portions of the Law Enforcement Officers' Bill of Rights are as follows:

"§ 728(c). Effect of subtitle on Chief's authority.—This subtitle does not limit the authority of the chief to regulate the competent and efficient operation and management of a law enforcement agency by any reasonable means....

"§ 730. Hearing before demotion, dismissal, transfer, etc....

(a) *Notice; record.*—If the investigation or interrogation of a law enforcement officer results in the recommendation of some action ... which would be considered a punitive measure, then ... the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board....

"§ 734B. Conflicting law, ordinance or regulation; preemption of local legislation.

Except for the administrative hearing process provided for in Article 41, § 4–201 concerning the certification enforcement power of the Police Training Commission, the provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle.

"§ 734D. Waiver of rights.

Any officer may waive in writing any or all rights provided in this subtitle."

charge on January 2, 1989. The officers were also notified that a hearing, pursuant to § 730 of the Law Enforcement Officers' Bill of Rights, was scheduled for February 2, 1989. Arguing that the violations were unfounded, the officers attempted to file a grievance in accordance with their collective bargaining agreement.[2] The Hagerstown Police Chief, Paul L. Wood, refused to hear the grievance, taking the position that the collective bargaining agreement did not encompass disciplinary matters.

Prior to the scheduled Law Enforcement Officers' Bill of Rights hearing, the officers filed in the Circuit Court for Washington County an application for a show cause order pursuant to § 734 of the Law Enforcement Officers' Bill of Rights.[3] The officers argued that they were denied their right, guaranteed by § 734D, to waive a hearing under the Law Enforcement Officers' Bill of Rights. The City of Hagerstown's position was that the officers were not being

---

2. The officers' union which is the American Federation of State, County, and Municipal Employees Council 67, Local 3373, AFL–CIO (AFSCME) has had a collective bargaining agreement with the City of Hagerstown since 1986. The agreement was authorized by a city ordinance. Under Maryland law, for a public employee collective bargaining agreement to be valid, it must be authorized by a statute or ordinance. *See Anne Arundel County v. Fraternal Order*, 313 Md. 98, 113, 543 A.2d 841, 848–849 (1988). Articles XII and XIII of the collective bargaining agreement in this case address grievance and arbitration procedures. The agreement states at § 5 of Art. XII:
    "The procedures outlined in Articles XII and XIII of this Agreement shall not be applicable to any disputes instituted and processed under the Officer's Bill of Rights, Maryland Annotated Code, Article 27, Sections 727–734D or any other provision of the Maryland Annotated Code."

3. Section 734 of the Law Enforcement Officers' Bill of Rights provides:
    "§ 734. Application to court for show cause order.
    Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded."

denied the right to waive a hearing. Instead, according to the City, they could waive the right to a hearing, but, once the right was waived, the officers were not free to pursue a grievance under the collective bargaining agreement. The circuit court issued the show cause order and stayed both the Law Enforcement Officers' Bill of Rights hearing and the grievance procedure.

At the show cause hearing, the City of Hagerstown argued that the Law Enforcement Officers' Bill of Rights provided an exclusive remedy and that the officers must either submit to its procedures or be disciplined at the discretion of the Chief of Police. The officers contended that they were free to waive all of the procedures under the Law Enforcement Officers' Bill of Rights and elect to pursue an alternative remedy under the collective bargaining agreement. The circuit court held that the Law Enforcement Officers' Bill of Rights did not provide the exclusive remedy and that the collective bargaining agreement's grievance procedures provided an alternative remedy.

The City of Hagerstown appealed to the Court of Special Appeals. Although the parties did not raise in the Court of Special Appeals the issue concerning the exclusivity of the Law Enforcement Officers' Bill of Rights, the intermediate appellate court decided this "critical preliminary question" sua sponte. *City of Hagerstown v. Moats,* 81 Md.App. 623, 568 A.2d 1181 (1990). The appellate court held that the Law Enforcement Officers' Bill of Rights was the exclusive remedy in this case and that the General Assembly did not intend to allow officers to circumvent the procedures of the Law Enforcement Officers' Bill of Rights in order to file a grievance pursuant to a collective bargaining agreement. 81 Md.App. at 628, 568 A.2d at 1183. Judge Alpert, writing for the court, stated (81 Md.App. at 631–632, 568 A.2d at 1185):

"The LEOBOR is a 'special form of remedy' as contemplated by the Court of Appeals in [*Prince George's County v.*] *Blumberg*[, 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808

(1981) ]. The Legislature established the statutory procedures for just the kind of case we have before us—a disciplinary matter.... We believe that the LEOBOR, an extremely comprehensive statute requiring nearly twenty pages in the Maryland Annotated Code, provides an 'adequate and available' procedure, and that the issues involved in deciding whether an officer should be disciplined are within the expertise of that officer's police or sheriff's department.... Nothing in the plain language of the LEOBOR indicates that the Legislature ... intended to permit officers to pick and choose between the LEOBOR procedures and the collective bargaining agreement procedures."

The officers petitioned this Court for a writ of certiorari, claiming that (1) the Court of Special Appeals abused its discretion by resolving the case based upon an unbriefed and unargued issue and (2) the General Assembly did not intend for the Law Enforcement Officers' Bill of Rights to be an exclusive remedy. This Court granted the petition, and we shall affirm the decision of the Court of Special Appeals.[4]

## I.

Officer Moats contends that because the City of Hagerstown failed to brief and argue the issue of the exclusivity of the Law Enforcement Officers' Bill of Rights before the Court of Special Appeals, the trial court's ruling that the statute did not provide an exclusive administrative remedy became final for purposes of this litigation.

An appellate court ordinarily will consider only an issue which is properly raised by the parties in the appellate

---

4. Only one of the officers, Officer Moats, is presently a party before this Court. Officer Shifler ultimately elected to submit to the Law Enforcement Officers' Bill of Rights procedures rather than file a grievance. Officer Moats continues to argue that he is entitled to elect an alternative remedy under the collective bargaining agreement.

court, unless the issue concerns the jurisdiction of the trial court or of the appellate court. The failure of an appellant to raise an issue in the appellate court is usually deemed a waiver as to the issue. *See, e.g., Foster, Evans and Huffington v. State,* 305 Md. 306, 315, 503 A.2d 1326, 1330–1331, *cert. denied,* 478 U.S. 1010, 1023, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 722, 723, 745 (1986); *Health Services Cost Review Comm'n v. Lutheran Hospital,* 298 Md. 651, 664, 472 A.2d 55, 61 (1984); *Logan v. Town of Somerset,* 271 Md. 42, 67, 314 A.2d 436, 449–450 (1974); *Ricker v. Abrams,* 263 Md. 509, 516, 283 A.2d 583, 587 (1971); *Wooddy v. Wooddy,* 256 Md. 440, 450–451, 261 A.2d 486, 491 (1970); *Harmon v. State Roads Comm'n,* 242 Md. 24, 30–32, 217 A.2d 513, 516–517 (1966). Nevertheless, an appellate court has discretion to excuse the waiver and to consider an issue even though it was not properly raised by a party. *See, e.g., Crown Oil v. Glen,* 320 Md. 546, 561–562, 578 A.2d 1184, 1191 (1990); *Foster, Evans and Huffington v. State, supra,* 305 Md. at 315–316, 503 A.2d at 1331. *See also Atlantic Mutual v. Kenney,* 323 Md. 116, 122, 591 A.2d 507, 510 (1991).

Moreover, because of important public policy considerations, there is a limited category of issues, in addition to jurisdiction, which an appellate court ordinarily will address even though they were not raised by a party. *See, e.g., Muhl v. Magan,* 313 Md. 462, 480–481, 545 A.2d 1321, 1330–1331 (1988); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 787, 506 A.2d 625, 631 (1986); *Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 232, 449 A.2d 385, 388 (1982); *Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 169, 448 A.2d 935, 940 (1982), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Sec., Dep't of Human Res. v. Wilson,* 286 Md. 639, 644–645, 409 A.2d 713, 717 (1979). The exhaustion or exclusivity of an administrative remedy is such an issue. In *Bd. of Ed. for Dorchester Co. v. Hubbard, supra,* this Court stated (305 Md. at 787, 506 A.2d at 631):

"While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party."

■ The Court of Special Appeals properly raised sua sponte the important policy question concerning the exclusivity of the administrative procedure under the Law Enforcement Officers' Bill of Rights.

## II.

■ The language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters.

In *Abbott v. Administrative Hearing Board*, 33 Md.App. 681, 687–688, 366 A.2d 756, 759–760 (1976), *cert. denied*, 280 Md. 727 (1977), the Court of Special Appeals held that the Law Enforcement Officers' Bill of Rights preempted conflicting provisions of the Prince George's County merit system ordinance. Because the procedures under the county personnel laws could not be reconciled with the procedures under the Law Enforcement Officers' Bill of Rights, the intermediate appellate court did not reach the "highly persuasive ... preemption by occupation" argument. 33 Md.App. at 687, 366 A.2d at 759.

At the next session of the General Assembly after *Abbott*, an amendment to the statute was enacted in order to deal with the relationship between the Law Enforcement Officers' Bill of Rights and other statutes providing alternate remedies for police officers. In Ch. 366 of the Acts of 1977, the General Assembly added § 734B to the Law Enforcement Officers' Bill of Rights, which states in part: "the provisions of this subtitle shall supersede any State,

county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle." The enactment of § 734B, however, went beyond the holding of *Abbott* and resolved the "highly persuasive" preemption by occupation argument by adding the following: "any local legislation shall be preempted by the subject and material of this subtitle." Thus, the General Assembly has expressly provided that the Law Enforcement Officers' Bill of Rights procedures are an officer's exclusive remedy, at least with regard to alternate procedures under local law. As this Court in *Baltimore City Police v. Andrew*, 318 Md. 3, 13, 566 A.2d 755, 760 (1989), observed with regard to § 734B,

> "[o]ne can scarcely imagine a clearer statement of the scope of the LEOBR. The subtitle is to be a law that is supreme and all-encompassing, within its State-wide sphere of operations."

Furthermore, subsequent history demonstrates continued adherence to the position that the procedures of the Law Enforcement Officers' Bill of Rights would be the exclusive remedy for law enforcement officers faced with disciplinary charges. Since 1977, there have been several attempts to amend the Law Enforcement Officers' Bill of Rights in this regard. The General Assembly in 1987 passed Senate Bill 860, and in 1988 it passed Senate Bill 227. The intent of these bills was "to allow law enforcement officers to elect to waive rights under the Law Enforcement Officers' Bill of Rights and elect in the alternative a procedural or substantive right or guarantee under a collective bargaining agreement." Senate Judicial Proceedings Committee, "Summary of Committee Report," p. 2, contained in the Department of Legislative Reference's file on Senate Bill 860 (1987). Each of these bills was vetoed by the Governor. In the veto message on Senate Bill 860, the Governor expressed concern that this legislation would result in an "inconsistent application of the Law Enforcement Officers' Bill of Rights and a patchwork of supplemental protections under collective bargaining agreements." Laws of Maryland 1987, Vetoes, 3599–3600. The Governor expanded his reasoning

in the subsequent veto message on Senate Bill 227, stating (Laws of Maryland 1988, Vetoes, 5162–5163):

"The Law Enforcement Officers' Bill of Rights (LEOBR) establishes a uniform system of police discipline throughout the State.... The uniformity of the system enhances its effectiveness and the public's confidence in law enforcement. Senate Bill 227 would erode the uniformity of the system by allowing police officers in different jurisdictions to elect to be covered by the terms of the collective bargaining agreement in effect in that jurisdiction.... Being thus allowed to pick and choose among the various protections of the LEOBR, the resulting confusion and inconsistency could be very damaging."

Both of the Governor's vetoes were sustained by the General Assembly.

After his 1988 veto of Senate Bill 227, the Governor created a Task Force to study the matter. The product of the Task Force was filed in the General Assembly at its 1989 session as House Bill 687, and crossfiled as Senate Bill 91. House Bill 687 and Senate Bill 91 proposed an amendment to the Law Enforcement Officers' Bill of Rights which would allow an officer to choose between a method for forming a hearing board established by the Law Enforcement Officers' Bill of Rights and a method for forming a hearing board set forth in a collective bargaining agreement. It also permitted collective bargaining as to the finality of the hearing board's recommendation. The "Bill Analysis" by the Senate Judicial Proceedings Committee described the Governor's concerns and stated: "Senate Bill 91 addresses this objection because it applies solely to one aspect of the LEOBOR, the method by which a hearing board is formed, and does not permit an officer to 'pick and choose' between other provisions of the LEOBOR and a collective bargaining agreement." Senate Judicial Proceedings Committee, "Bill Analysis," contained in the Department of Legislative Reference's file on House Bill 687 and Senate Bill 91 (1989). One proponent of the bill stated: "It does not pave the way for a collectively bargained alterna-

tive to the LEOBR. It does not provide for a wholesale waiver of LEOBR rights in favor of some contractual grievance procedure." Statement of William W. Thompson, II, in support of House Bill 687, contained in the Department of Legislative Reference's file on House Bill 687 and Senate Bill 91. The bill was passed and signed by the Governor as Ch. 516 of the Acts of 1989. It is codified as Art. 27, § 727(d)(2) and § 731(d)(1)(ii).

The above-summarized legislative history clearly supports the position that the procedures of the Law Enforcement Officers' Bill of Rights are exclusive.[5]

■ Moreover, when the General Assembly enacts a comprehensive administrative remedial scheme, that administrative remedy is generally deemed exclusive. *Board v. Secretary of Personnel*, 317 Md. 34, 42–43, 562 A.2d 700, 704 (1989); *Clinton v. Bd. of Education*, 315 Md. 666, 678, 556

---

**5.** In addition to the amendments to the Law Enforcement Officers' Bill of Rights, the history of an amendment to the Public Ethics Law, Code, Art. 40A, § 1–103(B), is also relevant. Section 1–103(B) provides:

"The provisions of Article 27, §§ 727 through 734D of the Code do not apply to the activities carried out by the State Ethics Commission under this Article."

House Bill 428 proposed the above quoted provision in response to an Attorney General's Opinion stating that the State Ethics Commission must comply with the procedural provisions of the Law Enforcement Officers' Bill of Rights when investigating a law enforcement officer covered by that act. *See* 72 Op.Atty. Gen. 246 (1987). The intent of § 1–103(B) was to allow the State Ethics Commission to enforce uniformly the ethics law. Senate Judicial Proceedings Committee, "Floor Report," contained in the Department of Legislative Reference's file on House Bill 428.

Section 1–103(B) is a legislative exception to the exclusivity of the Law Enforcement Officers' Bill of Rights for the benefit of the Ethics Commission. It does not allow a law enforcement officer under investigation to waive the procedures under the Law Enforcement Officers' Bill of Rights in order to force the Ethics Commission to handle his case. In fact, in opposing the bill, the Maryland Department of Public Safety and Correctional Services stated: "Since there are no current exceptions to the applicability of the LEOBR ... this Agency opposes the enactment of this legislation." There remains no exception to the exclusivity of the Law Enforcement Officers' Bill of Rights which would give an option to the officer.

A.2d 273, 279 (1989); *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1087 (1986); *Comm'n on Human Rel. v. Mass Transit, supra,* 294 Md. at 230, 449 A.2d at 387; *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 643–645, 409 A.2d at 716–717. The Law Enforcement Officers' Bill of Rights provides such a comprehensive remedial scheme. *See* Judge Alpert's opinion for the Court of Special Appeals in the present case, setting forth in detail the comprehensive procedures of the statute, *City of Hagerstown v. Moats, supra,* 81 Md.App. at 629–631, 568 A.2d at 1184–1185. *See also Baltimore City Police v. Andrew, supra,* 318 Md. at 12, 566 A.2d at 759; *Miner v. Novotny,* 304 Md. 164, 173, 498 A.2d 269, 273 (1985); *DiGrazia v. County Exec. for Mont. Co.,* 288 Md. 437, 452, 418 A.2d 1191, 1200 (1980).

The language, legislative history and comprehensive nature of the Law Enforcement Officers' Bill of Rights establishes that the procedures provided by the Act are an officer's exclusive remedy in matters of departmental discipline.[6]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

---

**6.** Because we hold that the Law Enforcement Officers' Bill of Rights provides an officer's exclusive remedy in disciplinary proceedings, it is unnecessary to decide whether the collective bargaining agreement here involved applied to disciplinary proceedings. *See, supra,* footnote 2. Moreover, the issue was not raised by the petition for a writ of certiorari. *See* Maryland Rule 8–131(b)(1).