797 A.2d 770

Charles COLEMAN,

v.

ANNE ARUNDEL COUNTY POLICE DEPARTMENT.

No. 34, Sept. Term, 2001.

Court of Appeals of Maryland.

May 6, 2002.

110

Byron L. Warnken (Gary C. May of Law Offices of Bonnie L. Warnken, on brief), Baltimore, for petitioner/cross-respondent.

Julie T. Sweeney, Sr. Asst. County Atty. (Linda M. Schuett, County Atty., on brief), Annapolis, for respondent/cross-petitioner.

Mark G. Spurrier, Largo, brief of the Maryland Chiefs of Police Assoc., Inc., as amicus curiae in support of appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, Judge.

This case was initiated as a personnel disciplinary action taken against former Corporal Charles Coleman, Petitioner, by the Chief of Police ("Chief") of the Anne Arundel County Police Department (the "Department"), pursuant to a recommendation from a departmental Administrative Hearing Board ("Board") that had convened in the matter in accordance with Maryland's Law Enforcement Officers' Bill of Rights ("LEOBR"), Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27, §§ 727–734D.[1] As a result, Petitioner's employment by the Department was terminated.

---

1. Unless otherwise indicated, all statutory citations herein are to Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27, §§ 727–734D.

Events began in late 1997. Petitioner was then the target of a "sting" operation conducted by the Internal Investigation Division ("IID") of the Respondent Department. Petitioner apparently had been the subject of an earlier "integrity test" and passed.[2] Continuing its investigation of Petitioner, IID assembled an assortment of items, including $76 in "marked" currency, in a fictitious "lost" fanny pack that was turned over to him on 4 December 1997 by undercover officers posing as citizens. This effort was to determine whether Petitioner would process the property in accord with departmental policies. Although Petitioner properly processed several items in the fanny pack, the currency was not processed nor a receipt created for it by Petitioner before the end of his work shift.

The following day, Petitioner was ordered to report to his station house and, upon arrival, was issued a written emergency suspension order by the on-duty lieutenant, acting at the direction of his superior officer.[3] Petitioner then was ordered to empty his pockets. It was discovered that Petitioner had co-mingled the marked currency with his own funds, except for $5 of the $76 that he had spent. On 6 December 1997, Petitioner was suspended, with pay, pending further investigation or a determination by a hearing board.

Petitioner appeared before a three member administrative disciplinary hearing board[4] on 27 April 1998, to answer

---

The Law Enforcement Officers' Bill of Rights is presently codified at Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, §§ 727–734D.

2. There is no clear indication in the record of what prompted the investigation of Petitioner by IID.

3. At the direction of Petitioner's supervisory Captain, Petitioner was issued a written emergency suspension of police powers order pursuant to LEOBR § 734A(2). *See infra* note 14.

4. As provided in the LEOBR § 727(d)(1), a hearing board is defined as:
 (1) A board which is authorized by the chief to hold a hearing on a complaint against a law enforcement officer and which consists of not less than three members ... all to be appointed by the chief and selected from law enforcement officers within that agency, or law enforcement officers of another agency with the approval of the chief

charges of eight essentially theft-related violations of the Anne Arundel County Police Department rules, regulations, and procedures.[5] Following a three-day evidentiary hearing,[6] at which Petitioner and his counsel were present and fully participating, the Board, in a unanimous decision, found Petitioner "guilty" of all eight charges. Pursuant to § 731 of the LEOBR, the Board, in its 15 May 1998 memorandum to the Chief, effectively recommended termination of Petitioner's employment.[7] After considering several mitigating factors, the Board also suggested that Petitioner receive credit for any leave to which he was entitled prior to termination, thereby affording him the opportunity to bridge his time of employment to meet the twenty-years of service necessary for vesting

---

of the other agency, and who have had no part in the investigation or interrogation of the law enforcement officer. At least one member of the hearing board shall be of the same rank as the law enforcement officer against whom the complaint has been filed.

While exceptions to § 727(d)(1) can be found in § 727(d)(2) & (3), they are not applicable in the present case. Furthermore, "chief" is defined in § 727(g) to mean "superintendent, commissioner, chief of police, or sheriff of a law enforcement agency, or the officer designated by the official."

5. Specifically, Petitioner was charged with the following departmental violations:

| | |
|---|---|
| 1—Index Code 302, Rule 1 | *"Conformance to Law"* |
| 2—Index Code 302, Rule 7 | *"Integrity of Report System"* |
| 3—Index Code 302, Rule 14 | *"Conduct Unbecoming"* |
| 4—Index Code 302, Rule 16 | *"Neglect of Duty"* |
| 5—Index Code 302, Rule 23 | *"Handling of Property"* |
| 6—Index Code 1201, Sect. III, ¶ a | *"Property Forms"* |
| 7—Index Code 302, Rule 32 | *"Truthfulness"* |
| 8—Index Code 102, Sect. II | *"Code of Ethics"* |

A more detailed summary of the above charges will be discussed *infra* note 13 and related text.

6. A "hearing" is defined in § 727(e) of the LEOBR to mean "any meeting in the course of an investigatory proceeding, other than an interrogation, at which no testimony is taken under oath, conducted by a hearing board for the purpose of taking or adducing testimony or receiving other evidence."

7. The Board recommended separately for the violations represented by Charges 1, 3, 4, 5, 7, and 8 that termination be imposed, and recommended separately for the violations represented by Charges 2 and 6 that a 12–day suspension be imposed.

of retirement benefits.[8] On 2 June 1998, after reviewing the record, the Chief accepted the Board's recommendation of termination, but decided to make the termination effective immediately.[9]

On 1 July 1998, pursuant to § 732[10] of the LEOBR and in accordance with Maryland Rules 7–201–7–210,[11] Petitioner sought judicial review in the Circuit Court for Anne Arundel

---

8. At the time of Petitioner's termination on 2 June 1998, he was six months shy of his twenty-year anniversary as an Anne Arundel County police officer. Under the Anne Arundel County Code, a police officer does not vest for purposes of retirement benefits until the first business day after his twenty-year anniversary, which, in Petitioner's case, would have been 4 January 1999. Termination prior to this date prevents vesting of all retirement benefits.

9. In accordance with § 731(c) of the LEOBR, the recommendations of an Administrative Hearing Board as to punishment are not binding upon the chief, except in limited circumstances not relevant here. Section 731(c) provides:

 (c) *Review by chief, final order by chief.*—The written recommendations as to punishment are not binding upon the chief. Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing board and then the chief shall issue a final order. The chief's final order and decision is binding and may be appealed in accordance with this subtitle. Before the chief may increase the recommended penalty of the hearing board, the chief personally shall:
 (1) Review the entire record of the hearing board proceedings;
 (2) Meet with the law enforcement officer and permit the law enforcement officer to be heard on the record;
 (3) Disclose and provide to the officer in writing at least 10 days prior to the meeting any oral or written communication not included in the hearing board record on which the decision to consider increasing the penalty is based, in whole or in part; and
 (4) State on the record the substantial evidence relied on to support the increase in the recommended penalty.

10. Section 732 of the LEOBR provides:

 Appeal from decisions rendered in accordance with § 731 shall be taken to the circuit court for the county pursuant to Maryland Rule 7–202. Any party aggrieved by a decision of a court under this subtitle may appeal to the Court of Special Appeals.
 Section § 731 concerns any decision, order, or action taken as a result of an administrative hearing pursuant to the LEOBR.

11. Maryland Rules 7–201–7–210 regulate judicial review of administrative agency decisions where judicial review is authorized by statute.

County of his termination, alleging, *inter alia,* various errors of law, including an alleged error that the Board had applied the preponderance of the evidence standard of proof, rather than the clear and convincing evidence standard required by the circumstances, in its assessment of whether the Department had proven the charges. On 3 January 2000, the Circuit Court filed its Opinion and Order affirming the termination decision. Of particular relevance, the Circuit Court, citing *Meyers v. Montgomery County Police,* 96 Md.App. 668, 626 A.2d 1010 (1993), acknowledged that the preponderance of the evidence standard may be used by an LEOBR hearing board (*see Meyers,* 96 Md.App. at 708, 626 A.2d at 1030), but concluded that the Board in this case actually considered and decided the case utilizing the clear and convincing standard. Accordingly, even assuming the clear and convincing standard was required to be used by the Board as Petitioner argued, the Circuit Court found no error because the record, in its judgment, satisfied that standard.

Petitioner filed an appeal to the Court of Special Appeals, raising due process violations and other errors of law, and again asserting an alleged error concerning the appropriate standard of proof to be applied in a local police department action under the LEOBR. In a published opinion, the Court of Special Appeals affirmed. *Coleman v. Anne Arundel County Police Dep't,* 136 Md.App. 419, 452, 766 A.2d 169, 187 (2001). With regard to the proper standard of proof, the Court of Special Appeals found that the preponderance of the evidence standard was the correct standard to apply in a LEOBR case involving a local police disciplinary personnel action, but disagreed with the Circuit Court that the Board had utilized the preponderance of the evidence standard, not the clear and convincing standard, in the matter.

Petitioner filed a petition for writ of certiorari with this Court, which was granted. *Coleman v. Anne Arundel Police,* 364 Md. 461, 773 A.2d 513 (2001). We also granted Respondent's conditional cross-petition. The Maryland Chiefs of Police Association was permitted to file an amicus brief in support of Respondent.

### Issues

Petitioner presents the following issue for our review:

Whether *Everett v. Balt. Gas & Elec. Co.*, 307 Md. 286, 513 A.2d 882 (1986), the Due Process Clause, or both, require clear and convincing evidence—and not a mere preponderance of the evidence—to (1) convict a police officer of eight theft-related disciplinary charges, (2) terminate his career within nine months of retirement, and (3) deny him more than one million dollars in actuarially calculated retirement benefits?

In Respondent's conditional cross-petition, the following question was presented: [12]

Did the Court of Special Appeals err by failing to hold that the Petitioner's trial Board used the clear and convincing standard?

### The Record

We recount the underlying facts as framed by the Court of Special Appeals.

On December 4, 1997, the Internal Investigation Division (IID) of [Respondent], Anne Arundel County Police Department (the "Department"), conducted an investigation targeting [Petitioner], a nineteen year veteran of the force. A number of items were assembled to be turned over to [Petitioner] to determine whether he would properly process them. The following articles were put into a green cloth fanny pack: three Tylenol tablets, a clear plastic baggy with white residue, two black film canisters with leafy vegetable residue, a Mickey Mouse key chain with a key and toy baseball bat attached, and a total of $76.25, consisting of three nickels, one dime, two $20 bills, three $10 bills, one $5 bill, and one $1 bill.

---

12. In its brief to this Court, Respondent actually posed two questions for this Court's review. The first question, however, was essentially the same question presented by Petitioner.

Two Howard County detectives, posing as ordinary citizens, turned the fanny pack over to [Petitioner]. They advised him that they had found the pack containing no identification outside a convenience store. [Petitioner] asked them no questions and let them leave without taking down any information. [Petitioner] radioed in for a case number for the recovered property and potential controlled dangerous substances (CDS) and then returned to the police station. [Petitioner] then called the convenience store and spoke with the clerk, who indicated that no one had reported lost or stolen property.

[Petitioner] prepared the suspected CDS for forwarding to the laboratory for testing. He placed the CDS into a sealed envelope, labeled the envelope appropriately, had the envelope witnessed, and recorded it in the logbook. These actions comported with departmental regulations.

Petitioner separated the bills from the rest of the items left in the fanny pack. He filled out a "Recovered Property Form" on which he made the following notations: "Mickey Mouse key chain with one key" and "3 nickels, 1 dime American currency." These items were placed in a blue envelope. Neither the Tylenol tablets nor the bills were turned in.

[Petitioner] has maintained that it was his understanding that he needed a supervisor to count the paper currency, seal the envelope containing it, and sign the envelope. Because there was no supervising officer on duty that evening, and he believed it unwise to leave the money on his desk, [Petitioner] put it in his shirt pocket. He took it with him with the intention of having it signed in later by a supervisor. Believing that he would see his direct supervisor at some point during the shift, [Petitioner] did not seek out a supervisor. Instead, he went back out to work on making his performance levels for DWIs and traffic tickets.

[Petitioner] took the money home with him. The next morning, he put it with the rest of his money, and took it with him to a court appearance. He stopped by a fast food restaurant and paid with a five dollar bill.

After court and pursuant to orders to return to the station, [Petitioner] was ordered by the on-duty lieutenant that afternoon, Lieutenant Kenneth Schlein ("Lt. Schlein"), to empty his pockets and, after he did, to surrender the money to him. Schlein testified at the hearing that the following exchange, initiated by [Petitioner], took place:

[[Petitioner]]: It's here.

[Lt. Schlein:] What's here?

[[Petitioner]]: All the money from last night: sixty-five dollars; [1] I knew it was a setup; It was stupid of me.

1. There was actually $76.00 in the fanny pack, but all indications were that [Petitioner] merely made a mistake about the amount he had recovered the night before.

[Petitioner] pulled a money clip out of his pocket and took $71 from the total amount he had and began comparing the bills himself to the ones an IID officer had photocopied the previous day.

Lt. Schlein confronted [Petitioner] with the five dollar difference, and [Petitioner] stated that he must have spent the money. [Petitioner] was served an emergency suspension notice the same day. On December 12, 1997, he was charged with violating eight Anne Arundel County Police Department rules, regulations, policies and/or procedures. We quote from the Statement of Facts contained in [Petitioner's] brief, which accurately summarize[s] the charges as follows:

Charge 1 alleged that Cpl. Coleman failed to conform to "Md. Ann.Code art. 27, section 342" (the theft offense statute) when he "stole the $76 instead of reporting its recovery and submitting it ..." Charge 2 alleged that Cpl. Coleman violated the integrity of the reporting system when he "failed to submit [an] accurate and complete recovered property incident report." Charge 3 alleged that Cpl. Coleman engaged in conduct unbecoming a police officer by committing "theft" in that he "stole the $76.00" and his "conduct was criminal, dishonest and improper." Charge 4 alleged that Cpl. Coleman neglected his duty and had an unsatisfactory performance "by

stealing $76.00." Charge 5 alleged that Cpl. Coleman violated the reporting requirement regarding property or contraband by committing "theft" when he "stole the $76.00 instead of reporting its recovery." Charge 6 alleged that Cpl. Coleman failed to comply with the Recovered Property Form by "not put[ting $76] on Recovered Property Form." Charge 7 alleged that Cpl. Coleman violated the truthfulness requirement by "intentional misrepresentation by not mentioning $76." Charge 8 alleged that Cpl. Coleman violated his oath of office and the Code of Ethics by the fact that he "stole the $76 ..., was dishonest in thought and deed, and showed disrespect for ... the law against theft." [13]

The hearing before the Board was originally scheduled to take place on February 3, 1998. Pursuant to [Petitioner's] request, the hearing was continued to February 9, 1998. After an additional request by [Petitioner], the hearing was again postponed from February 9, 1998, to March 11, 1998. Additional correspondence then took place between IID and [Petitioner] wherein [Petitioner] requested hearing dates of April 27, 28, and 29, 1998. The Chair of the Board, Lieutenant Thomas Rzepkowski ("Lt. Rzepkowski"), granted this further continuance, and the hearing began on April 27, 1998.

In the meantime, on or about April 6, 1998, [Petitioner] was placed on Family and Medical Leave pursuant to the FMLA due to mental illness. [Petitioner's] personal physician, Dr. Dvoskin, identified his illness as "adjustment disorder with depressed mood, consider major depression." Dr. Dvoskin certified that [Petitioner] was unable to perform his duties and that it would not be possible for the Department to offer him reasonable accommodations so that he could continue working.

The Board convened for a hearing that lasted three days. On May 15, 1998, the Board sent its disposition and recommendation to the Chief. In its report, the Board made

---

13. For specific departmental code violations, *see supra* note 5.

extensive findings of fact and unanimously found [Petitioner] guilty of all eight charges. The Board was also unanimous in its recommendations for punishment. It recommended termination in connection with Charges 1, 3, 4, 5, 7, and 8, and twelve day suspensions in connection with Charges 2 and 6. The Board, in light of the fact that [Petitioner] was so close to retirement, also stated the following:

In recommending this punishment, it is *not* the intent of the Board to allow Corporal Coleman to safely retire and avoid the stigma of being "fired." The recommendation *is* for **termination.** However, the Board carefully listened to and considered the mitigating factors which Defense Counsel persuasively explained, including the financial impact to innocent family members. The Board also scrupulously viewed Corporal Coleman's 19+ year personnel folder. With minor exception, Corporal Coleman's work history is positively portrayed with sufficient commendations for good work performance. In the absence of any evidence offered to the contrary, the Board felt that it did not want to take away that which Corporal Coleman had apparently earned.

In fashioning its recommendation, the Board decided to ask the Chief of Police to consider allowing Corporal Coleman to be credited for any leave which he was lawfully entitled to prior to actual **termination.** The Board did not have access to actual numbers credited to Corporal Coleman, but the Board intended Corporal Coleman to be **terminated** the moment his leave ran out. The Board also did not have particular knowledge of accepted County policy regarding retirement eligibility details, but the Board did not intend to give anything additional to Corporal Coleman to allow him to reach his actual retirement date. If his numbers gave him the time permitted by contract to leave County service at 20–years, he would then be **terminated** at that first available date. (Emphasis in original).

The Chief issued his final order on June 2, 1998, immediately terminating [Petitioner's] employment.

*Coleman,* 136 Md.App. at 425–29, 766 A.2d at 172–174 (alterations in original) (citation omitted). We will include additional administrative factual findings as necessary to our analysis.

*Scope of Review*

 No statute expressly establishes the scope of judicial review of an administrative proceeding initiated by a county police department pursuant to the LEOBR. *See Montgomery County v. Stevens,* 337 Md. 471, 482, 654 A.2d 877, 882 (1995); *Younkers v. Prince George's County,* 333 Md. 14, 17, 633 A.2d 861, 862 (1993) (noting that unlike the scope of review established under the State Administrative Procedure Act (APA) when a state police agency is involved, Md.Code (1984, 1993 Repl.Vol., 1993 Cum.Supp.), State Government Art., §§ 10–201–10–226, the LEOBR is silent as to a specified scope of judicial review in a disciplinary action involving a county police officer). We have concluded that the scope of judicial review in a LEOBR case " 'is that generally applicable to administrative appeals.' " *Stevens,* 337 Md. at 482, 654 A.2d at 882 (quoting *Younkers,* 333 Md. at 17, 633 A.2d at 862). Thus, to the extent that the issue under review turns on the correctness of an agency's findings of fact, judicial review is narrow. It is " 'limited to determining if there is substantial evidence' in the administrative record as a whole 'to support the agency's findings and conclusions. . . .' " *Id.* (quoting *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994)). *See also Younkers,* 333 Md. at 18–19, 633 A.2d at 863; *Meyers,* 96 Md.App. at 708–09, 626 A.2d at 1030. While "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999), "we owe no deference to agency conclusions based upon errors of law." *State Ethics v. Antonetti,* 365 Md. 428, 447, 780 A.2d 1154, 1166 (2001). *See Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 267,

734 A.2d 227, 232 (1999); *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998). Petitioner's sole issue before us, namely, whether an incorrect standard of proof was applied in the assessment of whether the Department proved the charges, presents a purely legal question. Accordingly, this Court reviews the matter *de novo.*

## Discussion

■ The Law Enforcement Officers' Bill of Rights, currently codified at Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, §§ 727–734D, was enacted in 1974. *See* Chapter 722, Acts of 1974. The primary purpose of the LEOBR is " 'to guarantee certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal.' " *Prince George's County P.D. v. Zarragoitia,* 139 Md.App. 168, 171, 775 A.2d 395, 397 (2001) (quoting *Meyers,* 96 Md.App. at 686, 626 A.2d at 1019). *See* § 728. *See also Fraternal Order of Police v. Mehrling,* 343 Md. 155, 181, 680 A.2d 1052, 1065 (1996); *Balt. City Police v. Andrew,* 318 Md. 3, 12, 566 A.2d 755, 759 (1989); *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 452–53, 418 A.2d 1191, 1200 (1980) ("The legislative scheme of the LEOBR is simply this: any law-enforcement officer covered by the Act is entitled to its protection during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction."). It is the officer's exclusive remedy in matters of departmental discipline. *See* § 734B. *See also Moats v. City of Hagerstown,* 324 Md. 519, 526, 597 A.2d 972, 975 (1991) (noting that "[t]he language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters").

The LEOBR grants "extensive rights to law enforcement officers that are not available to the general public." *Meyers,* 96 Md.App. at 686, 626 A.2d at 1019. *See also Nichols v. Balt. Police Dep't,* 53 Md.App. 623, 627, 455 A.2d 446, 449 (1983). This is because "the nature of the duties of police officers [are] different from that of other public employees." *Cancelose v.*

*City of Greenbelt,* 75 Md.App. 662, 666, 542 A.2d 1288, 1290 (1988). Section 728(b) of the LEOBR sets forth specific standards for the investigation of a law enforcement officer's alleged misconduct. If the investigation results in the recommendation of some action, such as a "dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure," before an agency can take such action,[14] notice must be provided to the officer "that he is entitled to a hearing on the issues by a hearing board." § 730(a). Section 730 provides a detailed recitation governing the conduct of the hearing and the introduction of evidence.

This Court has been asked, by both parties, to determine the requisite standard of proof to be applied in a LEOBR administrative disciplinary proceeding involving a local department's action. That this is at all an open question stems from the combination of the General Assembly standing mute in the LEOBR statute as to the appropriate burden of proof to be applied in proceedings brought under its auspices and the State APA not applying directly to such local government proceedings. Where the legislature has not spoken, judicial interpretation is often required to "fill in the blanks." JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 400, at 150 (2d ed.1993). *See also, e.g., Grimes v. Kennedy Krieger,* 366 Md. 29, 100, 782 A.2d 807, 850 (2001). There also is a need to re-visit this Court's decision in *Everett v. Balt. Gas & Elec.*

---

**14.** Section 730(a) provides two exceptions to a law enforcement agency taking immediate disciplinary action. Of relevance in the instant case is the exception allowed under § 734A(2) of the LEOBR, which provides as follows:

(2)(i) Emergency suspension with pay may be imposed by the chief when it appears that the action is in the best interest of the public and the law enforcement agency.

(ii) If the officer is suspended with pay, the chief may suspend the police powers of the officer and reassign the officer to restricted duties pending ... final determination by an administrative hearing board as to any departmental violation.

(iii) Any person so suspended shall be entitled to a prompt hearing. Petitioner was issued an emergency suspension at the direction of his Police Captain on 5 December 1997 and immediately relieved of his police duties. *See supra* note 3.

*Co.,* 307 Md. 286, 513 A.2d 882 (1986), in which the clear and convincing standard was applied in an administrative adjudication before the Maryland Public Service Commission (whose proceedings expressly are exempt from the contested case provisions of the State APA) involving charges of fraud, in tandem with consideration of the Court of Special Appeals's decision in *Meyers v. Montgomery County Police Dep't,* 96 Md.App. 668, 626 A.2d 1010 (1993), in which the preponderance of the evidence standard was determined by the intermediate appellate court to apply in an administrative disciplinary proceeding brought by a local police department under the LEOBR, where the police officer was charged with excessive use of force in making an on-duty arrest.

In the present case, the Department promulgated standards and procedures to be used by its departmental boards. Those standards and procedures specify that disciplinary charges against an officer be proven by a preponderance of the evidence.[15] Petitioner's first contention essentially is that

---

**15.** Respondent's rules controlling the standard of proof for the Board to use are found in both the Administrative Hearing & Suspension Boards Manual and the Trial Board Procedures Manual. Both manuals require the Board to apply the preponderance of the evidence standard in determining whether charges are proven.

Section III.F.1.e. of the Administrative Hearing & Suspension Boards Manual, titled "Degree of Proof," provides the following:
[T]he degree of proof necessary for a hearing board to make a finding of guilt is the "preponderance of the evidence."
Preponderance of evidence denotes evidence which is of greater weight or more convincing than that which is offered in opposition to it; that is, evidence which as a whole shows that fact or causation sought to be proved is more probable than not. The trier of facts has to determine on which side of an issue the majority of "preponderance" or credible evidence falls.
Section III of the Trial Board Procedures Manual is titled "Order and Burden of Proof," and provides the following:
For the prosecution to prevail, the Hearing Board must be convinced by a preponderance of the evidence that the accused did, in fact, violate the rule and/or regulation. Some commentators have indicated that a preponderance of the evidence means a fifty-one (51) percent margin for the party which has the burden of proof....
....

*Everett* mandates otherwise, arguing that the burden of clear and convincing evidence, as opposed to the less rigorous standard of preponderance of the evidence, is required by the nature of the charges in the present case.[16] Petitioner's

---

If the administrative charge is that the accused violated a criminal law, the prosecutor must prove every element of the underlying crime, but only by a preponderance of the evidence. . . .

The LEOBR does not address directly or expressly the authority of a local police department to adopt rules or regulations to implement the statute. The statute, however, does appear to contemplate indirectly that such rules may exist. For example, § 734B addresses the Legislature's intent to preempt conflicting legislative and regulatory enactments:

[T]he provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle.

In addition, § 728(c) provides:

This subtitle does not limit the authority of the chief to regulate the competent and efficient operation and management of a law enforcement agency by any reasonable means including but not limited to, transfer and reassignment where that action is not punitive in nature and where the chief determines that action to be in the best interests of the internal management of the law enforcement agency.

16. In Maryland, there are three recognized standards of proof to test the sufficiency of the evidence in differing contexts: (1) proof by preponderance of the evidence; (2) proof by clear and convincing evidence; and (3) proof beyond a reasonable doubt. *See Wills v. State,* 329 Md. 370, 373–74, 620 A.2d 295, 296 (1993); *Meyers,* 96 Md.App. at 687–89, 626 A.2d at 1019–20; *Weisman v. Connors,* 76 Md.App. 488, 502, 547 A.2d 636, 642–43 (1988). The Maryland Pattern Jury Instructions are instructive with regard to defining those standards.

The standard of proof by a preponderance of the evidence is defined in the Maryland Pattern Jury Instructions as follows:

To prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds a belief that it is more likely true than not true.

. . . .

If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it.

MPJI 1:7 (3d ed.2000).

Proof by clear and convincing evidence is defined in the Maryland Pattern Jury Instructions as follows:

assertion primarily relies upon this Court's holding in *Everett,* which Petitioner contends stands for the proposition that proof by clear and convincing evidence is required in an administrative adjudicatory hearing whenever the charging allegation involves "fraud, dishonesty, or a serious criminal offense." Petitioner argues that the allegations of his theft-related misconduct include all of these elements, which, in a civil judicial forum, requires proof by the clear and convincing standard. Noting that the fixed burden of persuasion ought to be the same in an administrative proceeding as it is in a civil judicial proceeding involving allegations of like nature, Petitioner argues that the allegations of his theft-related misconduct must be supported by the higher evidentiary standard of clear and convincing evidence. *Everett,* 307 Md. at 303, 513 A.2d at 891. In addition, Petitioner argues that his administrative charges constitute serious misconduct that, if charged criminally, would constitute a crime under the Maryland theft statute, Art. 27, § 342. Indeed, Petitioner claims that the allegations, and the severity of the potential punishment he faced, are even more serious than the circumstances

---

To be clear and convincing, evidence should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous and "convincing" in the sense that it is so reasonable and persuasive as to cause you to believe it.
MPJI 1:8 (3d ed.2000). *See also Berkey v. Delia,* 287 Md. 302, 317–20, 413 A.2d 170, 177–78 (1980). The preponderance and clear and convincing standards are used in civil matters, in both judicial and administrative contexts.
The highest standard of proof, firmly entrenched in, and reserved for, our criminal justice system, requires proof beyond a reasonable doubt, and is defined in the Maryland Pattern Jury Instructions as follows:
The State has the burden of proving the guilt of the defendant beyond a reasonable doubt.... However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.
A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs....
MPJI–Cr. 2:02 (2001). *See also Wills,* 329 Md. at 375–85, 620 A.2d at 297–302.

in *Everett* and *Meyers,* and thus necessitate application of the higher standard of clear and convincing evidence.

Petitioner's second contention is that the holdings of the U.S. Supreme Court under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of this Court concerning Article 24 of the Maryland Declaration of Rights, dictate application of the clear and convincing standard of proof under the circumstances of this case.

## I.

In *Everett v. Balt. Gas & Elec. Co.,* 307 Md. 286, 513 A.2d 882 (1986), this Court was asked whether a regulated public utility provider (BGE) must prove allegations of fraud or criminal conduct against a customer by a preponderance of the evidence, or by the more demanding standard of clear and convincing evidence, in an administrative hearing before the Maryland Public Service Commission ("Commission"). The customer, an individual, challenged BGE's intended termination of her residential utility service. BGE wished to terminate Everett's service at her then-present address for alleged non-payment of fraudulently obtained service at a prior residence. Upon receiving notice of the proposed termination, and the grounds on which it was based, Everett filed a complaint against BGE with the Commission, denying the allegations and requesting a hearing on the matter. The Commission ordered BGE to answer the complaint and assigned the matter to a hearing examiner.

BGE's response to Everett's complaint alleged two instances of "fraudulent[ ] use[ ][of] gas and electric service supplied from BG & E" during an antecedent three (3) year period, 1977–80, by applying for service under a fictitious or other family member's name. *Everett,* 307 Md. at 290–91, 513 A.2d at 884. BGE also alleged that on two separate occasions after Everett's service had been denied for non-payment, she had her service restored without BGE's knowledge or permission. Following the hearing, the examiner issued a proposed order in which he concluded that BGE bore the burden of proof by

clear and convincing evidence. At that time, neither the Commission's enabling statute or its regulations addressed the question of what standard of proof applied in such circumstances. Applying the clear and convincing standard to the record evidence,[17] the hearing examiner ultimately determined that BGE had not met its burden. The utility appealed to the Commission, which determined that the appropriate standard of proof was preponderance of the evidence, and, upon application of that standard, concluded that the utility had sustained its charges of fraudulent use. Accordingly, Everett's complaint was dismissed.

Everett sought judicial review in the Circuit Court for Baltimore City of the Commission's order. The court determined that proof by clear and convincing evidence was the appropriate standard, and reversed the Commission's order and remanded the case to the Commission for further proceedings. BGE and the Commission appealed the circuit court's decision to the Court of Special Appeals. The intermediate appellate court concluded the preponderance of the evidence standard was appropriate and reversed the circuit court. Everett petitioned for a writ of certiorari to the Court of Appeals, which was granted.

Focusing on the "nature" of the dispute between the parties before the Commission, the Court first determined that Everett's claimed use of a fictitious name in applying for utility service amounted to an allegation of fraud. Casting about for an appropriate standard of proof in a legislative and administrative vacuum, the Court noted that, under a long-standing common law principle, similar allegations must be proven by clear and convincing evidence if made in civil judicial proceed-

---

17. BGE's evidence indicated that Everett resided at 508 E. 43rd Street during the period in question and that she obtained service unlawfully at that address. On the other hand, Everett produced evidence that tended to show that she lived with her mother and brothers on Round Road, not at the 43rd Street address, during the relevant time period. According to her evidence, the house on 43rd Street was occupied by her daughter Janet, her grandchildren, and a boarder. *Everett*, 307 Md. at 291, 513 A.2d at 885.

ings. *Everett*, 307 Md. at 300–01, 513 A.2d at 889–90 (citing *Peurifoy v. Cong. Motors, Inc.*, 254 Md. 501, 517, 255 A.2d 332, 340 (1969)). Addressing the other allegations leveled by BGE against Everett, the Court determined that Everett's supposed unauthorized use of service could support a criminal charge under Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 192,[18] and accordingly, the conduct alleged by BGE amounted to an allegation of the commission of a crime.

Recognizing that the "preponderance of the evidence standard is generally applied in civil cases in courts and administrative proceedings," the *Everett* Court explained that "certain cases require a more exacting standard because of the seriousness of the allegations." *Everett*, 307 Md. at 301, 513 A.2d at 890 (citing MCCORMICK ON EVIDENCE § 337 at 959 (E. Cleary 3d ed.1984)). The Court also reviewed its decisions in *First Nat. Bank of S. Md. v. U.S.F. & G. Co.*, 275 Md. 400, 411, 340 A.2d 275, 283 (1975) (applying the clear and convincing evidence standard where there was an allegation of fraud) and *Rent–A–Car v. Globe & Rutgers Fire Ins. Co.*, 161 Md. 249, 267, 156 A. 847, 855 (1931) (explaining that when a crime is imputed in a civil case, something more than a mere preponderance of the evidence must be produced to prove the conduct). Ultimately we held:

> [W]here a utility alleges that a customer engaged in conduct amounting to fraud or to a crime and such conduct constitutes the sole basis of the customer's alleged responsibility for prior unpaid bills, the utility must prove its allegation by clear and convincing evidence to justify termination of service for non-payment.

*Everett*, 307 Md. at 304, 513 A.2d at 891.

Petitioner claims in the instant case that close scrutiny of the "nature" of his alleged conduct reveals that each of the eight allegations for which he was charged and found "guilty" encompasses essentially the traits of fraud and dishonesty, as

---

18. Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 192, pertains to criminal fraud upon gas companies by tapping or tampering with utility lines.

well as the criminal offense of theft. Petitioner notes that this Court has determined that theft is the "embodiment of deceitfulness," and, as such, is included among the *crimen falsi*. *Beales v. State*, 329 Md. 263, 270, 619 A.2d 105, 108 (1993). *See Wicks v. State*, 311 Md. 376, 382, 535 A.2d 459, 461(1988).[19] In an effort to align the facts of his case with those in *Everett*, Petitioner strains to argue that theft embodies, or is the equivalent of, common law fraud, assumedly because of its shared characteristics of deceitfulness and/or dishonesty, thereby requiring the elevated standard of proof of clear and convincing evidence under *Everett*. *See First Nat. Bank of S. Md.*, 275 Md. at 411, 340 A.2d at 283 (holding that when "fraud, dishonesty, or criminal conduct" is imputed, "something more than a mere preponderance of the evidence must be produced"). Equating the burden of proof in an administrative proceeding to be the same as in a parallel civil judicial proceeding involving allegations of the same nature, Petitioner concludes that allegations of his theft-related misconduct, like fraud, must meet the higher evidentiary standard of clear and convincing evidence. *Everett*, 307 Md. at 302, 513 A.2d at 890.

Alternatively, Petitioner contends that the administrative charges lodged against him constitute allegations of serious wrongdoing that, in a criminal context, could constitute a crime under Maryland's theft statute, Art. 27, § 342. Petitioner observes that theft, a common law crime codified at Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, §§ 340–45, is a *malum in se* offense, meaning the conduct is "inherently evil," WAYNE R. LaFAVE, CRIMINAL LAW 33–34 (3d ed.2000). Hence, Petitioner reasons that theft is a serious criminal offense that requires, under the reasoning of *Everett*, at least the clear and convincing standard of proof when

19. We have defined *crimen falsi* as " 'crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on [a] witness'[s] propensity to testify truthfully.' " *Sahin v. State*, 337 Md. 304, 312, 653 A.2d 452, 456 (1995) (quoting *Wicks*, 311 Md. at 382, 535 A.2d at 462 (citation omitted)). *See also Beales*, 329 Md. at 270, 619 A.2d at 108.

charged in an administrative context. *See Everett,* 307 Md. at 302, 513 A.2d at 890; *Rent–A–Car,* 161 Md. at 267, 156 A. at 855.

Petitioner allows that the intermediate appellate court's holding in *Meyers v. Montgomery County Police Dep't,* 96 Md.App. 668, 626 A.2d 1010 (1993), may be distinguished from the case *sub judice.* In *Meyers,* the Court of Special Appeals addressed the appropriate burden of proof in a LEOBR administrative disciplinary case in which an officer was charged with two violations of the Montgomery County Police Department's ("Department") "use of force" directive as a result of actions taken by him during an arrest. Following a hearing conducted in accordance with the LEOBR, Officer Meyers was found "guilty" of "kick[ing] and stomp[ing]" a citizen with his foot while the citizen was lying prone and handcuffed on the ground. *Meyers,* 96 Md.App. at 708, 626 A.2d at 1030. The hearing board recommended a short suspension as the sanction. The chief ultimately determined that Officer Meyers should receive a letter of reprimand in his file for this misconduct. *Meyers,* 96 Md.App. at 671, 626 A.2d at 1011.

The Court of Special Appeals rejected Officer Meyers's argument that the holding in *Everett* required the clear and convincing standard of proof in his LEOBR proceeding where the administrative allegation—use of excessive force—amounted to an allegation of criminal conduct. *Meyers,* 96 Md.App. at 694, 626 A.2d at 1023. The intermediate appellate court offered several reasons why *Everett* was distinguishable from Meyers's case. First, the court noted the special nature of the domain of the Public Service Commission ("Commission"), observing that, "the expertise the Commission brings to its proceedings, as opposed to the LEOBR proceedings that are conducted by laypersons, and the heightened judicial deference given to Commission decisions [by the courts of this State] as compared to other administrative agencies," might explain the Court's imposition of the clear and convincing standard in *Everett. Meyers,* 96 Md.App. at 693, 626 A.2d at 1022.

The court further distinguished *Everett,* noting that at least one of the charges in *Everett* amounted to an allegation of fraud. The court found *Everett* to be inapposite in Meyers's case, where the administrative allegation could not be construed reasonably to state a claim sounding in fraud. Moreover, the court noted, Officer Meyers's case involved an internal dispute between a public employee and the agency (Montgomery County Police Department) that employed him, contrasted to *Everett* which involved a dispute between a public consumer and a regulated utility before the administrative agency responsible for the field of public utility regulation.

As in the present case, the police officer in *Meyers* cited *First Nat. Bank of S. Md. v. U.S.F. & G. Co.,* 275 Md. 400, 340 A.2d 275 (1975), and *Rent–A–Car Co. v. Globe & Rutgers Fire Ins. Co.,* 161 Md. 249, 156 A. 847 (1931), as additional support for his contention that the clear and convincing standard was appropriate because allegations against him "amounted to an allegation of criminal conduct." *Meyers,* 96 Md.App. at 695, 626 A.2d at 1023. The court described the factual predicates of those cases:

> [T]he First National Bank of Southern Maryland ["Bank"] brought an action against U.S.F. & G., the Bank's insurer, on a fidelity bond for the recovery of losses the Bank incurred as a result of a Bank employee's allegedly dishonest and fraudulent acts. The Bank claimed that the employee's conduct fell within the terms of the fidelity bond, which covered, *inter alia,* "[a]ny loss through any dishonest, fraudulent or criminal act of any of the Employees...." The Court of Appeals stated:
>
>> When fraud, dishonesty or criminal conduct is imputed, something more than a mere preponderance of evidence must be produced; the proof must be "clear and satisfactory" and be of such a character as to appeal strongly to the conscience of the court.

*Meyers,* 96 Md.App. at 694, 626 A.2d at 1023.

With regard to *Rent–A–Car,* the court said:

In that case, a car rental company brought suit against its insurer when the insurer failed to pay a loss resulting from a fire. The insurer argued in its defense that the insured had intentionally started the fire that caused the loss in an effort to defraud the insurer. Following a judgment for the insurer, the insured appealed. The Court of Appeals reversed on the basis that a jury instruction required the defendant to prove its allegation of fraud by a preponderance of the evidence. (citations omitted)

The Court stated:

> The defense in this case amounted to a charge that the appellant, its officers and employee, had committed a serious criminal offense. In such cases the rule in England is that even in civil cases something more than a mere preponderance of evidence is required to establish guilt, and, whatever the law may be elsewhere, that appears to be the law of this state.
>
> . . . .
>
> [T]he general rule is stated as follows in *Jones on Evidence*, sec. 195: "When fraud or criminal conduct is imputed the decisions frequently declare that something more than a mere preponderance of evidence must be produced, and that the proof must be clear and satisfactory.

*Meyers*, 96 Md.App. at 694–95, 626 A.2d at 1023 (citations omitted).

The *Meyers* court rejected Officer Meyers's argument, interpreting *Everett, First Nat. Bank of S. Md.*, and *Rent–A–Car*, to stand for the proposition that "while the clear and convincing standard *must* be applied in a civil [judicial] proceeding in which fraud, dishonesty, or criminal conduct is alleged, this requirement d[id] not automatically extend to administrative proceedings." *Meyers*, 96 Md.App. at 695, 626 A.2d at 1023 (emphasis added). This interpretation, the appellate court explained, was permitted and supported by the merely directory nature of the language employed by the *Everett* Court when it stated, " 'where allegations involve

fraud or criminal conduct, something more than a preponderance of the evidence *may* be required in proving these charges.' " *Meyers,* 96 Md.App. at 695–96, 626 A.2d at 1023–24 (quoting *Everett,* 307 Md. at 302, 513 A.2d at 891) (emphasis added). Finally, the *Meyers* court noted that the holding in *Everett, supra,* was limited closely to the facts of that case. *Meyers,* 96 Md.App. at 696, 626 A.2d at 1024.

While Petitioner concedes that the preponderance of the evidence standard properly was approved in *Meyers,* he distinguishes the case *sub judice* based on a comparison of the nature of the misconduct charged in each case. He argues that while Meyers's misconduct amounted to assault and battery had it been asserted in a criminal context, the same misconduct alleged in a civil context as a tort need be proved only by the lower standard of preponderance of the evidence. On the other hand, Petitioner asserts, "fraud and theft require proof by clear and convincing evidence in a civil context;" accordingly the clear and convincing evidence standard should be applied in a parallel contested administrative adjudication.

The most widely applied measure of the ultimate burden of persuasion in civil cases is by a preponderance of the evidence, and generally that standard also is applicable in administrative proceedings. *Calvert County Planning Comm'n v. Howlin Realty Mgmt., Inc.,* 364 Md. 301, 327, 772 A.2d 1209, 1224 (2001); *Everett,* 307 Md. at 301, 513 A.2d at 890; *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 232, 156 A.2d 657, 663 (1959). This was so, and acknowledged to be, at the time *Everett* was decided. In judicial proceedings, however, this Court has said that "there are some factual issues that impinge so directly and significantly on fundamental rights as to require more than mere preponderance of the evidence to resolve adversely to the person affected." *Howlin,* 364 Md. at 327, 772 A.2d at 1224 (citing *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (declaring unconstitutional a New York statute that required a preponderance of the evidence to support termination of parental rights and requiring, instead, clear and convincing evidence); *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)

(civil commitment of person to mental institution); *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation proceeding)). *See also Mack v. Mack*, 329 Md. 188, 618 A.2d 744 (1993) (requiring clear and convincing evidence for withdrawal of life sustaining medical treatment).

Not all cases, judicial or otherwise, that warrant imposition of the clear and convincing standard, however, concern situations implicating individual liberties. As we have previously stated, allegations of fraud ordinarily must be established through clear and convincing evidence. *See Everett*, 307 Md. at 302, 513 A.2d at 890; *First Nat. Bank of S. Md.*, 275 Md. at 411, 340 A.2d at 283. *But see Krouse v. Krouse*, 94 Md.App. 369, 376–81, 617 A.2d 1098, 1102–04 (1993) (finding in will caveats, the caveator need prove fraud by only a preponderance of the evidence). *See also Owens–Illinois v. Zenobia*, 325 Md. 420, 469–70, 601 A.2d 633, 657 (1992) (requiring clear and convincing standard for proof of punitive damages); *Berkey*, 287 Md. at 332–33, 413 A.2d at 185 (requiring the heightened evidentiary standard of clear and convincing evidence for libel and slander); *Rent–A–Car*, 161 Md. at 267, 156 A. at 855 (requiring "more than a mere preponderance of evidence" when a crime is imputed in a claim or defense in a civil case).

We need not engage, as the Court of Special Appeals did in *Meyers*, in an elaborate effort to distinguish *Everett* from the facts of the case at hand. This is so because, unlike the intermediate appellate court, we have the authority, and shall exercise it in this instance, to overrule *Everett*. We explain.

At the time *Everett* was decided, the contours of general state administrative law principles in Maryland were materially different than now. The Court then did not have the benefit of a broad public policy pronouncement by the State legislature that expressed a particular standard of proof requirement relative to contested administrative cases. Seeking a principled basis for its decision in the absence of such a policy, the *Everett* Court sought guidance, by analogy, from the common law, which traditionally required the intermediate

standard of clear and convincing evidence to prove allegations of fraud in civil judicial proceedings. The Court drew on that analogy to decide *Everett.* The relevant legal terrain, however, has changed since *Everett* was decided.

It is instructive that the General Assembly, in its 1993 revision of Maryland's Administrative Procedure Act, Md. Code (1984, 1993 Repl.Vol., 1995 Supp.), State Government Art., §§ 10–101–10–305, established, for the first time, preponderance of the evidence as the generally applicable standard of proof to be used by covered state administrative agencies in contested case hearings, including, of particular relevance here, disciplinary actions by the Maryland State Police under the LEOBR. *See* APA § 10–217. This enactment occurred seven years after *Everett* was decided by this Court.

 The State APA was enacted initially in 1957, *see* Chapter 94, Acts of 1957 (originally codified at Md.Code (1957), Art. 41, §§ 244–256), and is currently codified at Md.Code (1984, 1999 Repl.Vol., 2001 Supp.), State Government Art., §§ 10–101–10–305. The purpose of the State APA is to provide a "standard framework of fair and appropriate procedures for agencies that are responsible for both administration and adjudication of their respective statutes." [20] *Bragunier Masonry Contractors v. Md. Comm'r of Labor & Indus.,* 111 Md.App. 698, 705, 684 A.2d 6, 9 (1996). The APA prescribes procedures for two types of proceedings: (1) procedures for the adoption of regulations, *see* APA §§ 10–101–10–139, and

---

**20.** The State APA, however, does not "attempt to resolve every procedural nicety." *See* Honorable John W. Hardwicke, *The Central Hearing Agency: Theory and Implementation in Maryland, in* 14 Journal of the National Association of Administrative Law Judges, 5, 58 (Honorable Edward J. Schoenbaum ed., Spring 1994). The objective of the APA is to "address[ ] only the most important and fundamental policy issues. The procedural fine points of administrative practice are more appropriately addressed in rules or regulations which can be changed more easily and frequently than can a statute." *Id.* at 58–59 n. 100 (quoting the Commission to Revise the Administrative Procedure Act, Report 3–4 (September 1, 1992) (hereinafter "Report")). The Commission, chaired by Paul Tiburzi, Esquire, (the "Tiburzi Commission), was appointed by Governor William Donald Schaefer in 1991 to conduct a comprehensive review of Maryland's APA.

(2) adjudicatory procedures for deciding contested cases, *see* APA §§ 10–201–10–227.[21] It "applies to all state administrative agencies not specifically exempted." *Bragunier*, 111 Md. App. at 705, 684 A.2d at 9. *See* APA § 10–203 (expressly excluding certain entities from the contested cases subtitle of the APA). Although the Executive branch state agencies excluded from the embrace of the State APA's contested cases provisions include some substantial portions of the State bureaucracy (the Worker's Compensation Commission, the State Department of Assessments & Taxation, and the Public Service Commission, to name a few), the bulk of the Executive branch agencies are included. This judicially noticeable fact gives weight and impetus to the broad sweep of the fundamental principles of State administrative law which should extend to similar proceedings beyond those conducted by administrative bodies strictly covered by the State APA.

■ A state police officer confronted with disciplinary proceedings is entitled to protections afforded by the contested cases provisions of the APA, *see* APA § 10–202, as well as those provided under the LEOBR. *See* § 727(b)(1) (defining "law enforcement officer" to include members of the Department of the State Police). *See also Md. State Police v. Zeigler*, 330 Md. 540, 553, 625 A.2d 914, 920 (1993) ("The [Maryland State Police Department] is a state administrative agency subject to the requirements of the Administrative

---

**21.** Section 10–202(d)(1) & (2) of the State APA, Md.Code (1984, 1999 Repl. Vol, 2001 Supp.) of the State Government Article defines a 'contested case' as follows:

*(d) Contested case.*—(1) "Contested case" means a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or

(ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

(2) "Contested case" does not include a proceeding before an agency involving an agency hearing required only by regulation unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle.

Procedure Act .... [and] entitled to the protections of the [LEOBR]...."). *Cf. Everett,* 307 Md. at 303, 513 A.2d at 891 (explaining that the APA expressly excludes from its coverage the proceedings of the Public Service Commission). The standard of proof to be applied in such contested case hearings under the APA is that of, "the preponderance of evidence unless the standard of clear and convincing evidence is imposed on the agency by regulation, statute,[22] or constitution." *See* APA § 10–217.[23]

County police agencies, as we noted earlier, are not included within the purview of the State APA. *See Stevens,* 337 Md. at 482, 654 A.2d at 882 (citing *Younkers,* 333 Md. at 17, 633 A.2d at 862, the Court noted that "agency action taken pursuant to the LEOBR by county police departments is not reviewed according to a statutorily defined standard...."). Moreover, as previously indicated, the LEOBR is silent on the standard of proof to be applied in a police disciplinary action. That is

---

22. Maryland statutes that impose the clear and convincing standard include "factual findings in physician disciplinary cases [Md.Code Ann., Health–Occupations § 14–405(b)], in cases involving the involuntary admission of a person to a state mental residential center [Md.Code Ann., Health—General I § 7–503(e)] and in cases involving intentional violations of the food stamp program [COMAR 07.01.04.12]." ARNOLD ROCHVARG, MARYLAND ADMINISTRATIVE LAW § 3.65 (MICPEL 2001).

23. Inclusion of § 10–217 in the APA was based upon a recommendation in the Report, *supra* note 22, which stated that it "is in the public interest to incorporate in the APA a clearly articulated standard of proof," and that "the best way to accomplish this goal [is] to codify case law by specifying that preponderance of the evidence is the standard." Report, *supra* note 22, at 25. Quoting *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 232, 156 A.2d 657, 663 (1959), the Tiburzi Commission noted that the " 'comparative degree of proof by which a case must be established is the same in an administrative as in a civil proceeding, i.e., a preponderance of the evidence is necessary.' " Report, *supra* note 22, at 25. Citing *Everett v. Balt. Gas and Elec. Co.,* 307 Md. 286, 513 A.2d 882 (1986), the Tiburzi Commission grudgingly acknowledged that certain types of cases may require application of the clear and convincing evidence standard, and therefore, recommended the inclusion of an "escape clause," allowing a standard of clear and convincing evidence to be used, *"but only* if it is imposed by statute, regulation, or the Constitution." Report, *supra* note 22, at 25. This disapproving view of the holding in *Everett* is one we now share.

not to say, however, that the Hearing Board in the present case was left adrift entirely in determining the burden of persuasion to be applied in its LEOBR proceeding. Respondent promulgated departmental standards and procedures, discussed *supra* note 15, providing that charged departmental violations must be proven by a preponderance of the evidence standard. There is no statute or other regulation that has been brought to our attention, or that we could find, that imposes a higher burden in a local police department LEOBR proceeding. The departmental standard in the present case obviously is consistent with APA § 10–217.

 In the absence of a legislative or regulatory enactment to the contrary, we believe that the preponderance of the evidence standard applied under analogous circumstances in *Meyers*[24] should apply generally in LEOBR proceedings to encourage uniformity of treatment of police in disciplinary matters, even where there are allegations of serious misconduct that might be cognizable as criminal if alleged in a judicial forum. This standard makes for more efficient and understandable LEOBR proceedings. This is of particular concern where the hearing boards are composed ordinarily of " 'laypersons' who do not specialize in presiding over proceedings or hearing disputes under the LEOBR. . . ." *Meyers*, 96 Md.App. at 693, 626 A.2d at 1022. As the Chair of Petitioner's Hearing Board frankly stated in response to counsel's arguments concerning the appropriate standard of proof: "we have, three police officers up here. We're not lawyers. We're not judges . . . we don't study or practice on a regular daily basis, . . . the case, pertaining to the issue which you have addressed."

Moreover, a public policy of uniformity in law enforcement disciplinary matters is consistent with the LEOBR's policy of

---

**24.** Observing that "House Bill 877, 1993 Md. Laws ch. 59, § 10–217 [of the State Government Art.], establishe[d] the preponderance of the evidence as the evidentiary standard to be applied in all contested cases under the State Administrative Procedures Act . . . ," the court in *Meyers* declined to apply the provision in its review of the case. *Meyers*, 96 Md.App. at 689 n. 3, 626 A.2d at 1020 n. 3.

uniformity discussed by the Court in *Moats,* 324 Md. at 527–29, 597 A.2d at 976–77. In *Moats,* the Court denied two police officers the right to waive the procedures under the LEOBR in lieu of pursuing a grievance under a collective bargaining agreement through their union. The Court emphasized that the legislative intent behind the LEOBR was to provide a uniform system of discipline that enhanced law enforcement's effectiveness and the public trust, and avoided the deleterious effects of "inconsistent application" of the LEOBR. *Moats,* 324 Md. at 527–28, 597 A.2d at 976 (internal quotations omitted) (citation omitted). Determining that the General Assembly intended for the LEOBR to provide an exclusive procedural remedy for law enforcement officers facing disciplinary charges, the Court discussed its legislative history:

> The General Assembly in 1987 passed Senate Bill 860, and in 1988 it passed Senate Bill 227. The intent of these bills was 'to allow law enforcement officers to elect to waive rights under the Law Enforcement Officers' Bill of Rights and elect in the alternative a procedural or substantive right or guarantee under a collective bargaining agreement.' . . .
> Each of these bills was vetoed by the Governor. . . . [T]he Governor expressed concern that this legislation would result in an 'inconsistent application of the [LEOBR]' . . . [stating in a subsequent veto message on Senate Bill 227 that]
>
>> The Law Enforcement Officers' Bill of Rights (LEOBR) establishes a uniform system of police discipline throughout the State. . . . The uniformity of the system enhances its effectiveness and the public's confidence in law enforcement. . . .

*Moats,* 324 Md. at 527–28, 597 A.2d at 976. *See also* § 734B (concerning LEOBR's preemption of conflicting State, county or municipal laws, ordinances or regulations).[25]

---

**25.** In relevant part, § 734B provides:

[T]he provisions of this subtitle shall supersede any State, county or municipal law, ordinance or regulation that conflicts with the provi-

Our conclusion is reinforced by comparison of the decisions of other states addressing similar questions. *See, e.g., Romulus v. Anchorage Sch. Dist.*, 910 P.2d 610, 618–19 (Alaska 1996) (upholding termination of teacher for sexually abusing students based on preponderance of the evidence standard which applies to disciplinary proceedings involving a government employee); *Clark v. Bd. of Fire and Police Comm'rs*, 245 Ill.App.3d 385, 184 Ill.Dec. 509, 613 N.E.2d 826, 829–30 (1993) (applying preponderance of the evidence standard in police officer's termination proceedings for obstruction of justice, bribery, conspiracy and official misconduct); *Romeo v. Dep't of Employment and Training*, 150 Vt. 591, 556 A.2d 93, 94 (1988) (stating that misconduct allegations of theft need only be proven by the civil standard of a preponderance of the evidence).

*Everett v. Balt. Gas & Elec. Co.*, 307 Md. 286, 513 A.2d 882 (1986), is inconsistent with the holding in the present case and is overruled.

## II.

Petitioner's second contention is that a procedure that permits "a finding of guilt for eight theft counts, termination [of employment], and the loss of more than one million dollars in actuarially calculated retirement benefits," on a mere preponderance of the evidence renders the result unconstitutional under both the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. *See Roberts v. Total Health Care, Inc.*, 349 Md. 499, 508–11, 709 A.2d 142, 146–47 (1998) (discussing procedural due process). Hence, Petitioner argues that there exists in this case a compulsion of constitutional force for the application of the clear and convincing evidence standard.

It is the function of due process to "protect interests in life, liberty and property from deprivation or infringement by

sions of this subtitle, and any local legislation shall be preempted by the subject and material of this subtitle.

government without appropriate procedural safeguards."
*Roberts*, 349 Md. at 508–09, 709 A.2d at 146–47. *See Mathews
v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18
(1976). We have recently explained that procedural due pro-
cess in an administrative proceeding " 'requires that administra-
trative agencies performing adjudicatory or quasi-judicial
functions observe the basic principles of fairness as to parties
appearing before them.' " *Gigeous v. E. Corr. Inst.*, 363 Md.
481, 509, 769 A.2d 912, 929 (2001) (quoting *Regan v. State Bd.
of Chiropractic Exam'rs*, 355 Md. 397, 408, 735 A.2d 991, 997
(1999) (citation omitted)). The fundamental requisites of fair-
ness are notice and an opportunity to be heard. *See Goss v.
Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725
(1975); *Sullivan v. Ins. Comm'r*, 291 Md. 277, 285, 434 A.2d
1024, 1028–29 (1981). There is no question here that Petition-
er received both notice and a hearing as provided under the
LEOBR. *See* Art. 27, § 730(a) & (d). Petitioner contends,
however, that the hearing board's failure to apply the clear
and convincing evidence standard in its determination of his
"guilt" provided him with less procedure than was his due in
view of the consequences he potentially faced.

Reflecting on the nature of administrative due process, we
have stated that, "[d]ue process . . . is not a rigid concept . . . .
'[it] is flexible and calls only for such procedural protections as
the particular situation demands.' " *Roberts*, 349 Md. at 509,
709 A.2d at 147 (quoting *Dep't of Transp. v. Armacost*, 299
Md. 392, 416, 474 A.2d 191, 203 (1984)). We explained that "in
determining what process is due, the Court will balance the
private and government interests affected." *Id.* (internal quo-
tation marks omitted) (citation omitted). In this regard, we
apply the following balancing test developed by the Supreme
Court in *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d
18, to assist us in our endeavor:

> [I]dentification of the specific dictates of due process gener-
> ally requires consideration of three distinct factors: First,
> the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See also Meyers,* 96 Md.App. at 697–98, 626 A.2d at 1024–25.

■ While conventional rules of civil litigation require that parties "need only prove their case by a preponderance of the evidence," in certain limited circumstances, the heightened burden of clear and convincing evidence is required "when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 253, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989) (plurality opinion), *aff'd, Hopkins v. Price Waterhouse,* 920 F.2d 967 (1990), superceded by statute on other grounds as stated in, *Landgraf v. USI Film Prods.,* 511 U.S. 244, 251, 114 S.Ct. 1483, 1489–90, 128 L.Ed.2d 229 (1994). *See, e.g., Santosky,* 455 U.S. at 747, 102 S.Ct. at 1391, 71 L.Ed.2d 599 (termination of parental rights); *Addington,* 441 U.S. at 419, 99 S.Ct. at 1806, 60 L.Ed.2d 323 (involuntary civil commitment); *Woodby,* 385 U.S. at 277, 87 S.Ct. at 484, 17 L.Ed.2d 362 (deportation proceeding); *Chaunt v. United States,* 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960) (denaturalization). *But see Rivera v. Minnich,* 483 U.S. 574, 580, 107 S.Ct. 3001, 3005, 97 L.Ed.2d 473 (1987) (determining preponderance standard was constitutionally adequate in paternity proceedings where the primary interest of the putative parent is in avoiding the "serious economic consequences" that flow from a court order establishing paternity). In *Addington,* the Supreme Court considered the appropriate standard of proof to be applied in an involuntary civil commitment proceeding. The Supreme Court explained that:

The function of a standard of proof, as that concept is embodied in the Due Process Clause ... is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' *In re Winship,*

397 U.S. 358, 370 [, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) ] (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

441 U.S. at 423, 99 S.Ct. at 1808, 60 L.Ed.2d 323. Remarking on the evolution of the law in this area, the Supreme Court recognized the emergence of three different, supposedly distinct, standards of proof for different types of cases:

At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.

In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. . . . This is accomplished by requiring under the Due Process Clause that the state prove the guilt of an accused beyond a reasonable doubt.

The intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal," and "convincing," is less commonly used, but nonetheless 'is no stranger to the civil law.' One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the "clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases.

*Addington,* 441 U.S. at 423–24, 99 S.Ct. at 1808, 60 L.Ed.2d 323 (citations omitted). Applying the balancing test developed in *Mathews,* the Supreme Court determined that clear and convincing evidence—not the criminal standard of beyond a reasonable doubt—adequately satisfied appellant's procedural due process rights in the civil commitment context presented there. *See Addington,* 441 U.S. at 433, 99 S.Ct. at 1813, 60 L.Ed.2d 323.

In *Santosky,* the Supreme Court held that the heightened standard of clear and convincing evidence—not preponderance of the evidence—was mandated in termination of parental rights proceedings. Evaluating the issue under the *Mathews* balancing test, the Court found "the private interest affected [was] commanding; the risk of error from using a preponderance standard [was] substantial; and the countervailing governmental interest favoring that standard [was] comparatively slight." *Santosky,* 455 U.S. at 758, 102 S.Ct. at 1397, 71 L.Ed.2d 599. Discussing the intermediate standard of proof, the Supreme Court remarked:

> This Court has mandated an intermediate standard of proof—"clear and convincing evidence"—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.' Notwithstanding 'the state's civil labels and good intentions,' the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'

*Santosky,* 455 U.S. at 756–57, 102 S.Ct. at 1396, 71 L.Ed.2d 599 (internal quotations omitted) (citations omitted).

■■■ Applying the *Mathews* test to the case at hand, we first examine "the private interest that will be affected by the official action." 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d 18. Petitioner claims deprivation of two private interests: (1) a "property" interest in his continued employment as a police officer and, by corollary, his pension benefits; and/or (2) a

"liberty" interest based upon the deleterious nature of the charges lodged against him that, with a finding of "guilt," would result in damage to his reputation in the community at large and/or result in the attachment of a stigma that would preclude other employment opportunities. For purposes of our analysis, we shall assume, *arguendo,* that Petitioner demonstrated a cognizable property or liberty interest in his continued employment with the Anne Arundel County Police Department. Nevertheless, a review of the remaining two factors under *Mathews* persuades us that the preponderance of the evidence standard satisfies Petitioner's due process rights here.

Our inquiry under the second factor in *Mathews* is twofold: we must first consider "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used" in compliance with the LEOBR; we then appraise the "probable value, if any, of additional or substitute procedural safeguards" as proposed by Petitioner. *Id.* In this vein, we weigh "both the risk of erroneous deprivation of private interests resulting from use of a 'fair preponderance' standard and the likelihood that a higher evidentiary standard would reduce that risk" to determine "whether a preponderance standard fairly allocates the risk of an erroneous factfinding between the[ ] two parties." *Santosky,* 455 U.S. at 761, 102 S.Ct. at 1399, 71 L.Ed.2d 599. *See Meyers,* 96 Md.App. at 702, 626 A.2d at 1027.

The LEOBR provides essentially a two-phase administrative process in law enforcement disciplinary actions. The first phase regulates the procedures to be followed at interrogation or investigation of an officer's alleged misconduct. *See* Art. 27, § 728(b). The second phase concerns an adjudicatory proceeding before a hearing board if an investigation or interrogation results in a recommendation that the officer be subject to any disciplinary action. *See* §§ 730–731. The procedural safeguards mandated by § 730 guarantee an officer, *inter alia,* notice that he is entitled to a hearing on the issues before a hearing board, *see* § 730(a); the right to present evidence and argument with respect to the issues involved and the right to be represented by counsel, *see*

§ 730(d); the right of cross-examination of the witnesses who testify, *see* § 730(f); and the right to compel attendance of witnesses by summons, *see* § 730(j). Moreover, if the hearing board recommends the imposition of a disciplinary sanction, the chief of police makes the final determination whether to impose punishment based upon the findings, conclusions, and recommendations of the hearing board. *See* § 731(c). Finally, the LEOBR provides for judicial review of a final order by the police chief. *See* § 732.

There is no question here that Petitioner was afforded the panoply of rights provided by the LEOBR. Petitioner received a written, detailed notice of the pending charges; he retained legal counsel to represent his interests; he was given a copy of the investigation and discovery; he was granted a pre-termination evidentiary hearing that was conducted over a three-day period before a three-member hearing board comprised of his peers; he was provided with a written decision by the hearing board containing its findings; he was provided a written decision from the Chief explaining his reasons for the termination; and he has taken full advantage of his right to judicial review. As we indicated earlier, *supra* pages 122–123, the LEOBR grants extensive procedural protections and rights to law enforcement officers in disciplinary proceedings that are not available to the general public. We conclude that the multi-tiered protections prescribed by the LEOBR, when conducted properly as here, adequately protect against the risk of arbitrary decision-making and limits the risk of an erroneous deprivation of Petitioner's due process claims.

Nor do we find that implementation of the heightened standard of proof sought by Petitioner would so significantly reduce the risk of error that it should be implemented regardless of any additional administrative or financial burdens it would entail. Candor requires that we acknowledge the difficulty a lay panel may encounter in perceiving the subtle distinctions and nuances between these two abstract standards when called upon to apply it. *See Addington,* 441 U.S. at 425, 99 S.Ct. at 1809, 60 L.Ed.2d 323 (discussing the difficulty lay

jurors may have in understanding the differences among the three standards of proof, Chief Justice Burger observed, "we probably can assume no more than that the difference between a preponderance of the evidence and proof beyond a reasonable doubt probably is better understood than either of them in relation to the intermediate standard of clear and convincing evidence."). *See also Wills v. State,* 329 Md. 370, 374, 620 A.2d 295, 297 (1993) (noting that the terms "preponderance," "clear and convincing," and "reasonable doubt" are not "at least in their legal sense, street familiar"); *Weisman v. Connors,* 76 Md.App. 488, 503, 547 A.2d 636, 643 (1988) (noting the "amorphous" nature of the clear and convincing standard); *Tippett v. Maryland,* 436 F.2d 1153, 1158–59 (4th Cir.1971), cert. dismissed, *sub nom. Murel v. Balt. City Criminal Court,* 407 U.S. 355, 360, 92 S.Ct. 2091, 2094, 32 L.Ed.2d 791 (1972) ("However meaningful the distinction [between the two standards] may be to ... judges, ... it is greatly to be doubted that a jury's verdict would ever be influenced by the choice of one standard or the other."). This precise sentiment was reflected by the Chair of Petitioner's Hearing Board when he expressed his uncertainty about the board's ability to effectively differentiate between the two standards, *see supra* page 142. That is not to say the adoption of a standard of proof is an "empty semantic exercise." *Addington,* 441 U.S. at 424–25, 99 S.Ct. at 1808–09, 60 L.Ed.2d 323 (quoting *Tippett,* 436 F.2d at 1166 (Sobeloff, J., concurring in part and dissenting in part)). The standard of proof as adopted by the courts " 'reflects the value society places on individual liberty.' " *Id.* (quoting *Tippett,* 436 F.2d at 1166).

Finally, under *Mathews,* we must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d 18. While a heightened evidentiary standard would place a limited fiscal or administrative burden on county and municipal police agencies, we must "weigh heavily in their favor their interest in the internal discipline of the Police Department." *Meyers,* 96 Md.App. at 705, 626 A.2d

at 1028. It also serves the public's interest that the chief law enforcement executives are empowered to remove expeditiously corrupt officers from departmental ranks. Moreover, the adoption of a scheme that would mandate a higher level of proof in a local police department disciplinary action versus one initiated in the State police organization would create an inexplicable disparate impact between officers within the overall law enforcement community itself. This would not comport with LEOBR's public policy of uniformity discussed *supra* page 142.

Based on our evaluation of Petitioner's due process claims under *Mathews*, we conclude that the procedures afforded under LEOBR adequately protect an officer against an erroneous deprivation of his or her due process claims. The evidentiary standard of preponderance of the evidence, added to the array of other protections, strikes the appropriate balance between protecting the private interests of an officer accused of misconduct and a law enforcement agency's interest in maintaining internal discipline. We therefore conclude that the correct evidentiary standard to be applied under LEOBR in local police agency cases is the preponderance of the evidence standard. Accordingly, we do not address Respondent's questions presented in its conditional cross-petition.

*JUDGMENT AFFIRMED; PETITIONER TO PAY COSTS.*